Argued 27 March, decided 29 May, rehearing denied 26 June, 1906.

## CATLIN v. JONES.

85 Pac. 515.

SALES—PAYMENT AND DELIVERY AS CONCURRENT ACTS.

1. Where a contract requires one party to sell and the other to purchase certain property at a specified price, the payment of the price and the delivery of the property are concurrent acts, and should be simultaneously performed.

SALES—WILLINGNESS OF BUYER TO PERFORM—NEED OF TENDER.

2. Under a contract of sale making payment and delivery concurrent, the buyer cannot claim a default and damages against the seller unless he was able and willing to pay at the time and place appointed; but if he was so able and willing, neither tender nor demand is necessary to support an action for damages.

PLEADING—CURING DEFECTIVE COMPLAINT BY ANSWER—AIDER.

3. Where an essential fact has been omitted from the complaint, an issue as to such fact made by the answer and reply cures the defect in the complaint. For instance: In an action for damages for failing to deliver chattels as required by contract of sale, a failure to allege in the complaint that plaintiff was ready to accept and pay as required is remedied by a claim in the answer that the plaintiff was not present to receive the property. at the time and place specified, which plaintiff denied in the reply.

SALES—TIME OF DELIVERY—DAYLIGHT AND DARKNESS.

4. Under a contract requiring the delivery at a stated time and place of articles requiring inspection and examination, the delivery must be made at such an hour as will permit the inspection to be made by daylight. This rule is particularly applicable to hops, owing to the variations between bales in both quality and condition.

SALES—COMPLETED ACT OF DELIVERY.

5. Under a contract of sale requiring the delivery of property at a stated time and place, the mere physical production of the property at the required place is not a compliance with the contract. The seller or his agent must attend to make the delivery and receive the purchase price.

From Marion: GEORGE H. BURNETT.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by Russell Catlin and another against S. W. Jones, to recover damages for the breach of a contract to sell and deliver hops. The complaint alleges that on July 15, 1904, the parties to this action entered into a written contract, by the terms of which the defendant agreed to sell for 14½ cents a pound and deliver to the plaintiffs at Brooks Station, on board cars free of all expense, from 13,000 to 15,000 pounds of hops, to be grown during that season in certain specified yards, and to be of the first average quality for the year and section, and to be put up in new baling cloth, delivery and acceptance to be made between the 1st and 10th of October, 1904; that the defendant had of the hops mentioned in the contract 15,000 pounds or thereabouts, produced upon the premises described and of the kind and quality mentioned; that on the 10th of October, 1904, the plaintiffs sent their agent to defendant to ascertain whether he was ready to deliver the hops, but they were not all then baled or in a deliverable condition, and on the 17th of October, the hops being baled and ready for delivery, the plaintiffs tendered the purchase price thereof, and demanded a delivery, but defendant refused to accept the money or deliver the hops to the plaintiffs' damage in the sum of $2,025.

The answer admits the contract as alleged, avers that the hops therein stipulated to be sold by the defendant amounted to 14,086 pounds, and for an affirmative defense alleges that prior to October 1, 1904, the plaintiffs sold, assigned and transferred all their interest in the contract in question to T. Rosenwald & Co., who have ever since been the owners and holders thereof; that on October 10, 1904, the defendant had at Brooks Station the hops mentioned in the complaint, ready for delivery,

but that neither Rosenwald nor any one on his behalf was there ready and willing to accept or pay for them; that on the day named defendant was ready and willing to deliver the hops as called for by the contract to the legal owner and holder of such contract, but that there was no one at Brooks to receive the hops or pay for the same on the part of any person whatsoever.

The reply denies the material allegations of the answer and affirmatively alleges that during the year 1904, Rosenwald was a customer of the plaintiffs and they had agreed to sell and deliver to him in October of that year a large quantity of hops; that for the purpose of fulfilling their contract with him, they entered into the agreement with the defendant set out in the complaint and attempted to assign the same to Rosenwald, but when he learned that defendant refused to deliver the hops he declined to accept the assignment and insisted that plaintiffs comply with their agreement, which they were compelled to and did do at great loss and damage to them. Upon the issues thus joined the case was tried to a jury.

It was admitted that the hops in question amounted to 69 bales and weighed 14,086 pounds. The evidence for the plaintiffs tended to show that on October 10, 1904, they sent their agent, Earl Race, to defendant's residence near Brooks to ascertain if the hops were then in a deliverable condition, and to receive them if defendant was ready to deliver; that Race arrived at defendant's place some time after noon and told the defendant that plaintiffs were anxious to receive the hops, and inquired when he would be ready to deliver and he replied "at most any time"; that defendant gave Race a written order permitting him to take samples from the bales of hops which were then in the warehouse at the station at Brooks; that Race went from defendant's residence to Brooks, took samples from the hops then in the warehouse, and remained there until about 4:30 o'clock in the afternoon or thereabouts; that at that time there were only 40-odd bales in the warehouse.

The defendant, as a witness in his own behalf, testified that he told Race that he was then ready to deliver the hops to the plaintiffs; that 40-odd bales were in the warehouse at Brooks Station on the morning of the 10th of October, and had been

for some time previous; that afterward and on that day he caused 29 or 30 bales more to be hauled by his workmen to the warehouse, and placed with the other hops; that he himself was at the warehouse in the forenoon but did not return again that day, and the bill of exceptions recites that there was no evidence "tending to show that defendant or any person authorized by him was at the place when the hops were stored for the purpose of delivering the same to plaintiffs." There was testimony tending to show that all the hops were baled and in deliverable condition on October 17th, and were worth from 30 to 31 cents a pound; and that on that day the plaintiffs demanded the delivery thereof, and tendered to the defendant the purchase price, but that defendant refused to accept the money or make the delivery. The plaintiffs requested the court to instruct the jury:

"If the defendant did not have the hops at Brooks in time for the plaintiffs to inspect and receive them by daylight, but that he got them there so late that plaintiffs would have had to inspect and receive them after dark or at a time so late in the day that it was not possible to carefully inspect and receive them by the aid of daylight, then the defendant did not comply with that part of the contract which required him to have the hops at Brooks by the 10th day of October, 1904, and his defense on that issue cannot avail him."

This instruction was refused, and the cause was thereupon submitted. After the jury had been out for a time they returned into court and inquired whether it was necessary for the defendant to be at the warehouse on October 10th, after the last load of hops had been hauled in order to make a complete delivery. To this inquiry the court replied:

"I will say to you that the question presented is not within the pleadings. The plaintiffs have charged in their complaint that the hops were not in a deliverable condition, and that is the only ground that they allege as excusing them from paying or offering to pay the money on the 10th and they must recover on that ground or not at all. The question which you propound has nothing to do with the case under the evidence that they have offered."

The verdict was for the defendant, and plaintiffs appeal.

                                                   REVERSED.

(48th Or.—11)

For appellants there was a brief over the name of *Carson &
Cannon,* with an oral argument by *Mr. A. M. Cannon.*

For respondent there was a brief with oral arguments by *Mr.
George Greenwood Bingham* and *Mr. Martin Luther Pipes.*

MR. CHIEF JUSTICE BEAN delivered the opinion of the court.

1. By the terms of the contract upon which plaintiffs seek
to recover, the payment of the purchase price and the delivery
of the hops were made concurrent acts, to be performed at the
same time. The defendant was not bound to deliver the hops
until they were paid for, nor were plaintiffs bound to pay for
them until delivered. Payment and delivery were to be per-
formed simultaneously: *Beauchamp* v. *Archer,* 58 Cal. 431 (41
Am. Rep. 266) ; *Meeker* v. *Johnson,* 5 Wash. 718 (32 Pac. 772,
34 Pac. 148).

2. But, before the plaintiff can recover damages for a breach
of the contract, he must show more than the mere default of
the defendant. He must show that he was ready and willing
to perform his part of the contract by accepting and paying for
the hops at the time and place appointed. The hops were to
be delivered at a particular place, and if the plaintiffs were
ready at the appointed time and place to perform their part
of the contract, and the defendant did not have the hops there
ready for delivery, the right of action for a breach of contract
was complete without a tender of the purchase price or a
demand for the hops: *Coonley* v. *Anderson,* 1 Hill (N. Y.) 519 ;
*Neis* v. *Yocum* (C. C.), 16 Fed. 168. But if the defendant, as
he alleges, had the hops ready for delivery at the time and place
specified in the contract, the plaintiffs must show an offer then
to receive and pay for them before they can maintain an action
for nondelivery.

3. Now, it is not directly averred in the complaint that plain-
tiffs were ready and willing at the time and place specified to
perform the contract on their part, but this omission is cured
by the allegation of the answer that defendant had the hops at
Brooks Station ready for delivery at a time stipulated, but that
there was no one present to receive and pay for them. This
averment of the answer is denied by the reply, and an issue

thus made on the plaintiffs' readiness and willingness to per-
form the contract on their part. Consequently the defect in the
complaint is cured by the answer: *Turner* v. *Corbett*, 9 Or. 79;
*Chesapeake & Ohio R. Co.* v. *Thieman*, 96 Ky. 507 (29 S. W.
357); *Schency* v. *Hartford Fire Ins. Co.*, 71 Cal. 28 (11 Pac.
807); *Beckmann* v. *Phoenix Ins. Co.*, 49 Mo. App. 604. In an
action of this kind, readiness and willingness to perform by
the plaintiff must be alleged in the complaint, or else it will be
had on demurrer, but where such allegation is omitted and the
defendant in his answer by way of defense sets up nonperform-
ance by the plaintiff of the terms of the contract, and the
plaintiff takes issue upon such averment, the defect in the
complaint is helped out or aided by the subsequent pleading.
This rule is well illustrated in *Beckmann* v. *Phoenix Ins. Co.*,
49 Mo. App. 604. That was an action on a policy of fire
insurance, and the complaint failed to allege that the plaintiff
complied with certain conditions precedent to his right of action.
The court said the complaint would have been vulnerable to a
demurrer, but that the defendant having by way of defense
set up the nonperformance of the conditions precedent on the
part of the plaintiff, and plaintiff having taken issue by reply,
the defect was cured. The same principle is applied in other
cases cited.

4. The questions for determination, therefore, under the
pleadings, were (1) whether the plaintiffs were ready and will-
ing at the time and place stipulated to perform the contract
on their part by accepting and paying for the hops, and if so
(2) whether the defendant was ready and able at that time to
comply with the contract by making the delivery. Upon this
latter point the instruction requested by the plaintiffs was, in
our opinion, correct and should have been given and the inquiry
of the jury should have been answered in the affirmative.
Where, under the terms of an executory contract of sale, the
delivery of bulky articles, such as hops, which require inspection
and examination, is to be made at a particular place, tender
must be seasonably made so that the vendee, who is bound to
attend for the purpose of receiving the property, may have an

opportunity to examine and inspect it by daylight to ascertain whether it complies with the contract: 2 Meachem, Sales, § 1137; *Croninger* v. *Crocker,* 62 N. Y. 151; *Startup* v. *MacDonald,* 46 E. C. L. 591. The rule upon this subject is thus admirably stated by Baron Parke, in *Startup* v. *MacDonald:* "A party who is, by contract, to pay money, or to do a thing transitory, to another, anywhere, on a certain day, has the whole of the day, and if on one of several days, the whole of the days, for the performance of his part of the contract; and until the whole day, or the whole of the last day, has expired, no action will lie against him for the breach of such contract. In such a case the party bound must find the other, at his peril, and within the time limited, if the other be within the four seas; and he must do all that, without the concurrence of the other, he can do, to make the payment, or perform the act, and that, at a convenient time before midnight, such time varying according to the quantum of the payment, or nature of the act to be done. * * But where the thing to be done is to be performed at a certain place, on or before a certain day, to another party to a contract, there the tender must be to the other party at that place; and as the attendance of the other is necessary at that place to complete the act, there the law, though it requires that other to be present, is not so unreasonable as to require him to be present for the whole day where the thing is to be done on one day, or for the whole series of days where it is to be done on or before a day certain; and, therefore, it fixes a particular part of the day for his presence; and it is enough if he be at the place at such convenient time before sunset on the last day as that the act may be completed by dayligfit; and if the party bound tender to the party there, if present, or, if absent, be ready at the place to perform the act within a convenient time before sunset for its completion, it is sufficient." If, therefore, the defendant did not have the hops at Brooks in time for the plaintiffs to inspect them by daylight on the day stipulated for the delivery, he did not comply with his contract and his act is no defense in this case, if in fact the plaintiffs have themselves

complied with the contract so as to entitle them to sue the defendant for nondelivery.

5. Nor would the mere transportation of the hops to Brooks Station be a defense, if the plaintiffs were there ready and willing to accept them, unless the defendant or some one representing him was present to make the delivery and to receive the purchase price. If both parties had been present at the time and place agreed upon and able to perform their respective undertakings, neither could have put the other in default without offering to perform on his part: *Davis* v. *Adams*, 18 Ala. 264. It was, therefore, incumbent on the plaintiffs, if they were ready and willing to perform the contract and the defendant was likewise ready, to. offer to perform before they could maintain an action for a breach, but they were not bound, as Judge DEADY says in *Neis* v. *Yocum*, 16 Fed. 168, "to go out into the highways and elsewhere to find the seller" to make such offer. It was the duty of the defendant, if he desired to perform his contract, to be present at the time, and the place of performance either in person or by agent so that he could have delivered the hops and received the pay therefor.

Judgment reversed, and new trial ordered.       REVERSED.