Decided 2 July, 1907.

**LONGFELLOW *v.* HUFFMAN.**

90 Pac. 907.

SALES—CONCURRENT ACTS.

1. An agreement by a debtor to sell to his creditor specified chattels at a fixed price for each, the total to be applied on the vendor's note, and by the creditor to accept the specified chattels at the price stated and credit the price on such note, is one requiring the performance of concurrent acts, and neither can claim default against the other without himself being ready, able and willing to perform his part.

PLEADING—AMENDMENT—DISCRETION OF COURT.

2. A motion for an amendment of the complaint during trial is addressed to the discretion of the trial court, which is not subject to review, in the absence of a manifest abuse.

CONTRACTS—EFFECT OF REFUSAL BY ONE PARTY.

3. A declaration by one party to a contract, made prior to the time fixed for performance, that he will not comply with the contract, may excuse an offer to perform by the other party before bringing action for a breach, but it will not excuse him from being able to perform his part.

CONTRACTS—GENERAL RESULTS OF REPUDIATION.

4. The effect of a repudiation of a contract by a party thereto and the remedies available to the other party are discussed.

From Wallowa: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by N. C. Longfellow against John W. and Arnold R. Huffman to recover damages for a breach of the following contract:

"This Agreement, made and entered into this 2d day of November, 1904, by and between John W. Huffman and Arnold R. Huffman, partners doing business under the firm name and style of Huffman & Son, parties of the first part, and N. C. Longfellow, party of the second part, Witnesseth:

That in Consideration of the price of one dollar and fifty cents ($1.50) per head to be paid therefor by the second party, the parties of the first part hereby agree to sell and deliver to the second party all the lambs to be raised during the years 1905 and 1906, from a certain band of sheep now owned by the first parties and branded with, thus X, black paint. Said lambs to be delivered on or about October 1 in each of said years, at some convenient corral in Wallowa County, Oregon, at which time of delivery the amount of the price of said lambs shall be credited on a certain promissory note executed by the first parties in favor of the second party, dated October 1, 1904, for the sum of $2,676.00 and interest.

The Second Party Hereby Agrees to accept and receive said lambs at the time, place and price above specified, and to credit the amount of the price thereof on the promissory note above described.

In Witness Whereof, the said parties have hereunto set their hands in duplicate, at Joseph, Oregon, this the said 2d day of November, 1904.

|  | John W. Huffman and |
|---|---|
|  | Arnold Huffman, |
|  | by John W. Huffman, |
| In presence of | Parties of the First Part. |
| J. A. Rumble, | N. C. Longfellow, |
| F. V. Bowman." | Party of the Second Part. |

The complaint, after alleging the making of the contract and setting it out *in haec verba,* avers that prior to October 1, 1905, defendants raised from the band of sheep described not less than 1,400 lambs of the reasonable market value of $3 a head, or $4,200; that at the time and place of delivery specified in the contract plaintiff was, and ever since has been, ready, able and willing to accept said lambs, and credit the stipulated price thereof on the promissory note mentioned in the contract, but that defendants have wholly failed and refused to deliver the same or any part thereof, although requested so to do, to plaintiff's damage in the sum of $2,400.

Defendants by their answer admit the making of the contract, deny each and every other allegation of the complaint, and for an affirmative defense aver that on October 1, 1905, they purchased of plaintiff the band of sheep mentioned in the agreement sued on, and, as part of the consideration, executed and delivered to him their promissory note for $2,676, due on or before two years after date, and bearing interest at 10 per cent per annum; that thereafter, and on November 2, 1904, they entered into the contract sued upon for the purpose of securing payment of such note, and to permit them to pay the same in lambs at $1.50 per head; that prior to the maturity of the contract plaintiff sold and assigned the note to one Frank Hershy, since which time he has not been the owner and holder thereof and has been unable to comply with his contract and credit the price of the lambs thereon; that before the commencement of this action defendants paid to Hershy the full amount due on the note. The reply denies each and every material allegation in the answer, and affirmatively alleges that the promissory note referred to was secured by a chattel mortgage on the band of sheep mentioned in the agreement in suit and their increase, which mortgage was, at the time of making such contract, and for a long time prior and subsequent thereto, a valid and subsisting lien upon the lambs described in the complaint; that it was understood and agreed between plaintiff and defendants, at the time the contract in suit was executed, that it was a contract of sale, and not a mortgage.

Upon the issues thus joined the cause went to trial before the court and a jury. The plaintiff was called as a witness in his own behalf, and, among other things, testified that on or about September 1, 1905, he informed one of the defendants that he would accept a delivery of the lambs about the 16th or 18th of the month, but that defendant said he was not going to deliver them at all; that about 10 days later he had another conversation with defendant, and inquired if he intended delivering the lambs, and defendant said, "No, I don't have to turn them over to you, and I ain't a going to"; that he went down

to defendant's place about the 1st of October, 1905, and told him that he came to see if he was going to turn over the lambs to him, and defendant said he was not. He further testified in chief that he was ready, able and willing to perform his part of the contract, and to credit the price of the lambs on the note aforesaid, and that defendants never offered to deliver the lambs at any time or place. On cross-examination he was required to testify, over the objection and exception of his counsel, that about the time the contract sued on was made he assigned and transferred the note mentioned therein, and the mortgage given to secure its payment, to Frank Hershy, of the State of Nebraska, as collateral, and that the note has not since been in his possession or under his control; and also that he did not tender or offer any money to defendants at any of the times he demanded performance of the contract by them. On redirect examination, he was asked by his counsel to state the purpose for which the note and mortgage was transferred to Hershy, but the court refused to allow him to do so. Thereupon he asked and obtained leave to amend his reply by averring that such transfer was not an absolute sale, but a mere pledge or collateral security, and that he had a right to redeem at any time. Questions as to the purpose of the transfer were again renewed, but the court sustained an objection thereto, on the ground that the evidence sought was incompetent and immaterial, and not within the issues of the case. Plaintiff then asked leave to amend his complaint by pleading a repudiation of the contract by defendants prior to the time for performance, but the court denied the application, and, on motion of defendants, granted a nonsuit.                                    AFFIRMED.

For appellant there was a brief over the names of *O. M. Corkins* and *Daniel Webster Sheahan,* with an oral argument by *Mr. Sheahan.*

For respondents there was a brief over the names of *T. H. Crawford* and *John Simeon Hodgin,* with an oral argument by *Mr. Hodgin.*

Opinion by Mr. Chief Justice Bean.

1. The plaintiff contends that the stipulation in the contract between him and defendants that the purchase price of the lambs should, at the time of delivery, be credited on the promissory note mentioned in such contract, was an independent and subsidiary covenant, which could be broken by him without impairing his right to recover damages on a refusal of the defendants to deliver the lambs as agreed upon. But, as we construe the contract, the delivery of the lambs by the defendants, and the crediting of the price thereof on the promissory note, were made concurrent acts. The defendants agreed they would deliver the lambs to plaintiff for a stipulated price, at a certain time and place, and plaintiff agreed, in consideration thereof, that at the time of delivery he would credit the purchase price on the promissory note. The two acts were to take place concurrently, and the performance of one was dependent upon the performance of the other. The defendants were not required to deliver the lambs unless the credit was made and plaintiff was not obliged to make the credit until the delivery. Neither party could put the other in default without performance or an offer to perform on his part. It is therefore incumbent upon plaintiff, before he can recover damages for a breach of the contract by the defendants, to allege and prove performance or readiness and willingness to perform or some legal excuse for nonperformance: 9 Cyc. 645; *Lewis* v. *Craft,* 39 Or. 305 (64 Pac. 809); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515).

By his complaint he places his case on the ground that he was ready, able and willing to perform his part of the contract by crediting the purchase price of the lambs on the note mentioned in the agreement at the time and place of delivery. Upon this theory, he must recover in this action, if at all. His complaint cannot be aided in this regard by the averments of the reply. Now, it appears from plaintiff's testimony that he was not able at the time defendants refused to deliver the lambs to comply with his part of the contract. The note was not at that time in his possession or under his control. He had previously as-

signed and transferred it to another, and it was out of his
power to make the proper credit. That the transfer was in-
tended as collateral security does not change the result. The
fact still remains that he did not have the note in his possession,
and could not make the proper credit thereon. The defendants
were not obliged to make the delivery and rely upon a promise
of plaintiff to see that the proper credit was subsequently made.
They had a right to insist that it be made at the "time of de-
livery," and, if plaintiff was unable to make it at that time,
they were not bound to make delivery. Therefore the motion for
nonsuit was properly allowed.

2. The plaintiff applied to the court, during the progress of
the trial, for leave to amend his complaint by pleading a repudia-
tion of the contract by defendants prior to the time for delivery.
The allowance of this motion was within the discretion of the
trial court, and its ruling cannot be disturbed here unless there
was a manifest abuse of discretion, whoch does not appear. But,
if the complaint had been amended as desired, it would not have
stated a sufficient excuse for plaintiff's inability to perform his
part of the contract.

3. A declaration by one party to a contract, made prior to the
time fixed for performance, that he will not comply with such
contract, if not withdrawn, may dispense with or excuse an
offer to perform by the other party before bringing his action:
1 Beach, Modern Law Contracts, § 411; *Howard* v. *Daly,* 61
N. Y. 362 (19 Am. Rep. 285) ; *Bissell* v. *Balcom,* 39 N. Y. 275.
But it does not ordinarily excuse ability to perform.

4. "It is well settled," says the Supreme Court of Illinois,
"that, where one party repudiates the contract and refuses
longer to be bound by it, the injured party has an election to
pursue either of three remedies: He may treat the contract as
rescinded, and recover upon *quantum meruit* so far as he has
performed; or he may keep the contract alive for the benefit of
both parties, being at all times himself ready and able to per-
form, and at the end of the time specified in the contract for
performance sue and recover, under the contract; or he may

treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In the latter case the contract would be continued in force for that purpose. Where, however, the injured party elects to keep the contract in force for the purpose of recovering future profits, treating the contract as repudiated by the other party, in order to such recovery, the plaintiff must allege and prove performance upon his part, or a legal excuse for nonperformance": *Lake Shore & M. S. Ry. Co.* v. *Richards,* 152 Ill. 80 (38 N. E. 777: 30 L. R. A. 33). If it is true, as argued by plaintiff in his brief, but denied in his pleadings, that defendants voluntarily paid and discharged the promissory note before the time for performance had arrived, and thus by their own act put it out of the power of plaintiff to perform his part of the contract, that fact should have been averred in the complaint as an excuse for nonperformance, and is unavailing to the plaintiff until so pleaded.

Upon this record there is no error in allowing and granting the motion for a nonsuit. The judgment is therefore affirmed.

AFFIRMED.

Mr. Justice EAKIN, having presided at the trial below, took no part in this decision.