Argued July 30, decided August 6, 1912.

## MANN & BEACH v. FLYNN.

[125 Pac. 274.]

SALES—ACTIONS BY SELLER—EVIDENCE—WEIGHT AND SUFFICIENCY.

1. In an action by a seller against a buyer for failure to perform a contract of sale, evidence *held* to make a *prima facie* showing that the buyer concealed himself so as to prevent delivery and tender of a bill of sale, and hence a nonsuit was improperly granted.

SALES—DELIVERY—PLACE FOR DELIVERY.

2. Where a contract of sale does not fix the place of delivery, the seller is not bound to send or deliver the property to the buyer at any other place than that where it was kept when the contract was made.

SALES—DELIVERY—OBLIGATION TO DELIVER.

3. Where the conditions of a contract of sale were mutual and dependent and the contract did not specify any place for delivery, the seller performed its obligation by placing the property at the buyer's disposal, and it could not be placed in default without a tender of payment and demand of possession by the buyer.

SALES—PAYMENT OF PRICE—WAIVER OF DEFAULT.

4. Where a contract for the sale of a magazine provided that the seller should have the open accounts on the books of the magazine on a specified date, the acceptance by the seller of a subscription on that date was not a waiver of performance by the buyer.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Mann & Beach, a corporation, against L. J. Flynn, to recover money. It is alleged in the complaint, in effect: That plaintiff is a corporation, and that it consummated with the defendant a contract of which the following is a copy:

"This agreement, made and entered into this 18th day of February, 1911, by and between Mann & Beach, party of the first part, and L. J. Flynn, party of the second part. Whereas, in consideration of a check for five hundred ($500) dollars being deposited by the party of the second part with C. T. W. Hollister as first payment on the purchase price of a magazine known as 'The Northwest Architect,' the party of the first part does hereby agree to turn over to the party of the second part on the 1st

day of March, 1911, said magazine, subscription lists, contracts from advertisers, etc., free and clear from all liabilities. In consideration of the above, the party of the second part does hereby agree to pay to the party of the first part the sum of one thousand ($1,000) dollars, as follows: Five hundred ($500) dollars in cash and the second five hundred ($500) dollars either in cash or note acceptable to the party of the first part. It is further understood that the party of the first part is entitled to, and shall have, the open book accounts as shown on the 28th day of February, 1911, on the books of 'The Northwest Architect' account of Mann & Beach. It is further understood that the party of the first part shall have the printing of said magazine for the period of two (2) years, from March 1, 1911, provided the party of the first part's cost and quality of work is on basis of present standard of said magazine, and such price to be mutually agreed upon by said parties. It is further understood that the party of the first part shall be entitled to one-quarter page R. O. P. for advertising purposes in said magazine for the life of the printing contract. It is further understood that C. T. W. Hollister shall pay to the party of the first part the said deposit of five hundred ($500) dollars upon being informed that said contracts are signed and bill of sale delivered to the party of the second part. The party of the first part will have drawn up and submitted to the party of the second part a contract and bill of sale for said magazine. In witness whereof said parties have hereunto set their hands this 18th day of February, 1911, at Portland, Oregon. [Signed] Mann & Beach, C. E. Thomas, Secretary, Party of the First Part. [Signed] L. J. Flynn, Party of the Second Part. Witnesses: C. T. W. Hollister, F. O. Thompson."

That, in order to carry out the terms of that contract, the plaintiff's agent on March 1, 1911, made diligent search and inquiry for the defendant but was unable to find him. That in order to avoid a delivery of the property specified the defendant concealed himself on March 1, 1911, and for several days prior thereto, and the plaintiff's agent being unable to ascertain where he was,

notified him in writing March 6th of that year, that it was ready to comply with the stipulations of their agreement, a strict performance of which was waived by his conduct. That at all times since March 1, 1911, the plaintiff has been, and is ready, able and willing to fulfill and perform the conditions agreed upon, but the defendant has refused to comply therewith or to pay any part of the stipulated sum of $1,000, for which judgment was demanded. The answer admitted the making of the agreement, but averred that plaintiff had failed to comply with its terms, in consequence of which defendant on March 7, 1911, rescinded the contract and notified plaintiff thereof. For a further defense it was alleged that about March 1, 1911, the plaintiff, exercising control over the property, specified, solicited and secured a year's subscription to the Northwest Architect, thereby waiving the right to insist upon a specific performance of the agreement. The reply put in issue the allegations of new matter in the answer, whereupon the cause came on for trial without a jury, and, the plaintiff having introduced its evidence and rested, a judgment of nonsuit was given, and it appeals.                                    REVERSED.

For appellant there was a brief over the names of *Mr. Jay Bowerman* and *Messrs. Cole & Cole,* with an oral argument by *Mr. Barton Cole.*

For respondent there was a brief over the names of *Mr. Edward J. Brazell,* and *Messrs. Giltner & Sewall,* with an oral argument by *Mr. Brazell.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The question to be considered is whether or not the evidence received was sufficient to authorize a judgment in plaintiff's favor when no evidence was offered by the defendant. E. C. Thomas, the plaintiff's secretary, as its witness, testified to the effect that prior to March 1,

1911, he tried to complete a contract with F. O. Thompson, the defendant's agent, so as to authorize the plaintiff to print the magazine, but, objection having been made to the language employed in the writing submitted for that purpose, no agreement therefor was ever reached; that, though the plaintiff desired to print that publication, the failure to obtain a contract therefor would not have prevented a sale of the property; that the Northwest Architect was not published after March 1, 1911, at which time and thereafter the plaintiff held for the defendant at its office in Portland all the property mentioned; that on the day last named the defendant did not have an office in Portland nor did he then or ever demand the possession of any of the property, which at that time was unincumbered, and the plaintiff then and thereafter was the owner thereof and willing to deliver it to the defendant; that no bill of sale of the property was made or tendered to the defendant until March 6, 1911; and that on February 28th of that year the plaintiff received from George W. Foreman $3.00 for a year's renewal of his subscription to the magazine from December 1, 1910. The sworn statements of this witness were corroborated by the testimony of S. C. Beach, the president and manager of the plaintiff corporation, who stated that several times prior to March 1, 1911, he called at a room on the eighth floor of the Lewis Building, in Portland, which apartment the defendant claimed as his place of business, for the purpose of submitting to him a bill of sale and of turning over to him the property, but that he was unable to find him.

The foregoing is believed to be a fair statement of the material testimony relating to the plaintiff's ability and willingness to comply with and perform the terms of the written agreement hereinbefore set forth. Though no bill of sale was prepared until March 6, 1911, it is thought

a sufficient showing was made to impose upon the defendant the duty of refuting the testimony offered, and of showing that he did not absent himself so as to prevent a delivery of the specified property within the time stipulated or to thwart a tender of a bill of sale evidencing a transfer of the title.

2. It will be remembered that the contract did not fix the place of delivery of the magazine, subscription lists, contracts from advertisers, etc. In such case the seller is usually under no obligation to send or deliver the property to the buyer at any other place than where it was kept when a contract for its sale was effected. 24 Am. & Eng. Ency. Law (2 ed.) 1068. A text-writer, discussing this subject says:

"Ordinarily, in sales, the buyer must come for the goods before the seller is bound to deliver." Benjamin, Sales (6 ed.) 676.

3. The plaintiff's obligation was fully performed, if its agents placed the property at the disposal of the defendant, whose duty it was to tender payment therefor and to demand possession thereof. From a consideration of the language of the contract, it appears that these conditions were mutual and dependent, in which case neither party could put the other in default without an offer to perform. *Catlin* v. *Jones*, 48 Or. 158, 165 (85 Pac. 515) ; *Longfellow* v. *Huffman*, 49 Or. 486, 490 (90 Pac. 907.)

4. The plaintiff on February 28, 1911, received $3 for the renewal of a subscription to the Northwest Architect, which sum, if payable in advance, had been due since December 1, 1911. It will be kept in mind that the contract stipulated that the corporation was entitled to the open book accounts of the magazine on February 28, 1911. It would appear, therefore, that by receiving the money on that day plaintiff had not waived a sale of the property.

Believing that the testimony received was sufficient to have required the defendant to introduce evidence to refute the *prima facie* showing made by the plaintiff, the judgment is reversed, and the cause remanded for such further proceedings as may be necessary, not inconsistent with this opinion.                              REVERSED.