Argued February 7, reversed and remanded May 1, rehearing denied
June 26, 1923.

# ROSE v. U. S. LUMBER & BOX CO.

### (215 Pac. 171.)

Contracts—Contract for Sale of Output of Mill for Two Years and
Purchase of Such Output Held Mutual.

1. Where plaintiff agreed to sell entire lumber output of his
mill for two years and to operate the mill for that period, and de-
fendant agreed to buy the output, the contract was mutual, one
obligation being the consideration of the other.

Contracts—Construction of Written Contract is Question of Law for
Court.

2. Where a contract is in writing, its construction is a question
of law for the court.

Work and Labor—Action for Part Performance of Contract by
Seller of Value to Buyer Held Recoverable, Subject to Counter-
claim by Defendant for Breach by Seller.

3. Where plaintiff agreed to sell the entire output of his mill
for two years and to operate his mill for that period, and defend-
ant agreed to buy the output, plaintiff *held* entitled to recover for
what he did under the contract of value to defendant, though
plaintiff did not comply wth the contract in some respects short of
willful abandonment, subject to defendant's counterclaim for dam-
ages by reason of any breach by plaintiff.

Work and Labor—Damages on Which Buyer Bases Counterclaim in
Action by Seller for What He Did Under Contract must be
Averred.

4. Where in an action by the seller for what he did under con-
tract the buyer asserts a counterclaim, the damages claimed by the
buyer, on which the counterclaim is based, must be averred.

Trial—Refusal to Give Instruction as to Price to be Paid by Pur-
chaser of Lumber Held not Error Where Such Instruction Ig-
nored Terms of Contract.

5. In an action by seller on a contract to sell to buyer lumber
output of a mill at the best price that the buyer could get, less a
certain discount, refusal to instruct that the price to be paid for
the lumber shipped by seller was not the net price remaining after
payment of all expenses in connection with sale of lumber, and
not the price established by outside supplementary agreement as to
price, *held* not error where such instruction ignored the gross price
which affected the net price, and the net proceeds mentioned in the
contract were not defined nor affected by the terms further than
that there should be a certain discount.

Sales—Contract Held One for Product to be Manufactured, the
Price Thereof Being the Market Price, Less Named Discount.

6. A contract specifying that plaintiff agreed to sell, and de-
fendant agreed to buy, for purpose of resale, lumber manufactured

by plaintiff and to pay the best price obtainable, less discount of 2 per cent for cash and 5 per cent commission was contract for the sale of a product to be manufactured, defendant agreeing, in effect, to pay the market price, less the discount named.

**Sales—Measure of Damages for Breach by Buyer Under Contract to Purchase Lumber for Future Delivery Stated.**

7. Where the buyer under a contract for sale of property for future delivery refuses to take the property, the seller is entitled to recover the difference between the contract price and the lesser market value of goods at time and place of delivery; but if the contract is identical with the market price there can be no general damages beyond a nominal sum resulting from the breach.

**Sales—Special Damages for Breach of Contract must be Specially Pleaded.**

8. If a seller suffers any special damages because of buyer's breach, it is necessary to aver them specially.

**Logs and Logging—Application of Advance Money in Liquidating Expenses Other Than Those for Which Money was Advanced Breaches Agreement.**

9. Where, under a contract for sale of the lumber output of plaintiff's mill, defendant advanced $3,000 dollars to plaintiff to secure additional logging equipment and to construct a loading dock, an application of that fund to the liquidation of other expenses was a breach of the agreement.

**Sales—If Allegation of Performance Denied by Buyer, Seller must Prove Performance to Sustain Claim for Damages by Buyer's Breach.**

10. Where the buyer denied seller's allegation of performance of contract, it was incumbent upon seller to prove his averment of performance, and, if his own testimony contradicted his allegation of performance, it would amount to a failure of proof and defeat his claim for damages.

**Sales—Allegation of Loss of Investment on Contract Other Than With Buyer Held not Available as Ground for Damages for Buyer's Default.**

11. In an action by seller for breach of contract for sale of lumber, an allegation of damages by reason of buyer's breach, seller lost his entire investment in a mill and stumpage agreement with B., whereby plaintiff was damaged, *held* not available as a basis for claiming damages in the absence of a showing of a contractual relation between the contract sued on and the one with B., the allegation being no more than a statement that the seller did not make enough profits to pay his debts to B.

**Sales—What Seller must Allege for Breach of Contract for Sale of Property to be Manufactured Before Entitled to Damages Stated.**

12. In seeking damages for breach of contract of sale of lumber to be manufactured, seller must allege full performance or readiness and ability to perform on his part, so far as permitted by the buyer, before he can put the buyer in default and claim damages for the breach.

Sales—Allegation of Performance by Seller at Certain Date Held Consistent With Prior Violations of Performance by Him.

13. An allegation by a seller in an action for breach of contract that "on the 8th day of April, 1920, he was engaged in the per-. formance of said contract and was in every way complying with the terms thereof," *held* consistent with any number of violations of contract committed by the seller prior to that date, and hence the complaint was defective in that respect.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

For appellant there was a brief over the name of *Messrs. Platt & Platt, Montgomery & Fales,* with an oral argument by *Mr. Hugh Montgomery.*

For respondent there was a brief over the name of *Messrs. Skulason & Riesland,* with an oral argument by *Mr. B. G. Skulason.*

REVERSED AND REMANDED. REHEARING DENIED.

BURNETT, J.—It is admitted by the pleadings that the parties to this action made the following agreement in writing:

"Agreement entered into this 21st day of February, 1920, by and between D. V. Rose operating under the firm name of the Rose Lumber Company of Pacific City, Oregon, party of the first part and the U. S. Lumber and Box Company of Portland, Oregon, a corporation, existing under and by virtue of the laws of the State of Oregon, party of the second part, WITNESSETH:

"WHEREAS, the party of the first part is engaged in the manufacture of lumber and is not prepared to market the same and whereas party of the second part is engaged in the wholesaling of lumber, it is mutually agreed the first party will make use of the second party's services under the following conditions, to wit:

"Party of the first part agrees to sell to the party of the second part the entire cut of first party's mill

at Pacific City, Tillamook County, Oregon, of spruce and hemlock for two years from date of this contract. Party of the first part agrees to operate his mill continuously for the above named period. Party of the second part agrees to buy of the party of the first part the entire cut of his mill at Pacific City, Tillamook County, Oregon, for a period of two years from date of this contract of spruce and hemlock lumber.

"Party of the second part agrees to sell the stock of the said first party at the best price they are able to obtain and to pay the party of the first part the net proceeds of each and every carload of lumber shipped by party of the first part less the regular 2% discount for cash and 5% commission on the net proceeds of all cars which the party of the first part agrees to allow the party of the second part as their selling commission for and in consideration of their services rendered. The party of the second part have the privilege of sending party of the first part special cutting orders of such stock as ·he can successfully execute and the party of the first part agrees to manufacture all such orders as above stipulated. The party of the second part agrees, at all times, to sell all stock that is loaded out by the party of the first part. The party of the second part agrees to pay the party of the first part in full for each and every car shipped within fifteen days of date of invoice, having then possession of shipping documents, except in cases where cars have been put in transit and are not yet sold, and in these instances, the party of the second part will pay the party of the first part on the basis of the market, at the time such invoice comes due, any variation in price of cars that advance payments have been made on that were not sold at the time such advances were made shall be adjusted and settled when sale has actually been made.

"Party of the second part agreed to accept delivery and to advance the party of the first part 50% of the estimated market value of all lumber in pile at the mill or on dock in Tillamook about the first

of each month. All piles of lumber accepted and to be advanced on are to be covered and marked when advances are made 'Property of the U. S. Lumber & Box Company' and bill of sale executed to the said second party. It is agreed and understood that first party shall use such funds so advanced for the purpose of paying labor and such other bills as said lumber might be held liable for and that when said lumber is so marked and bill of sale executed it shall be free from all liability to liens of every sort. It is further understood and agreed that the maximum amount of lumber that will be accepted and advances made on is one million feet. All lumber on which advances have been made is to be insured by the party of the first part. Such insurance being drawn in favor of the party of the second part as their interests may appear. As a further consideration of the execution of this agreement the party of the second part agrees to advance the first party its ninety day acceptance for three thousand dollars ($3,000.00) within three days from date hereof to be used to secure additional logging equipment and in construction of loading dock at Tillamook. This advance to be paid by deducting two dollars per thousand feet board measure on all shipments until the total amount has been paid in full. The party of the first part agrees to accept the 90 day acceptance of the party of the second part on all advances made. It is mutually agreed that on all shipments where customers make complaints of quality of material that second party is authorized to make settlements and authorize reinspection of the cars in question by official inspector of the Pacific Lumber Inspection Bureau which shall be final as to grade and tally and the one in error to pay the expense of such inspection. In case it shall seem inadvisable to settle any claim in a different manner then second party shall consult with the first party and proceed according to mutual agreement.

"It is further mutually agreed that the second party is authorized and instructed to deduct from each car of lumber shipped by first party any amount of money advanced to first party on said lumber.

"The party of the second part further agrees that their books shall be open to the party of the first part for his inspection that he may familiarize himself of the prices being secured. In consideration of the foregoing the first party agrees to keep his mill in proper repair so that he can and will produce lumber well and evenly manufactured that shall be merchantable in the general markets all in a good and workmanlike manner."

As a first cause of action, the plaintiff who is the party of the first part in the contract quoted, alleges in substance that under the agreement he sold to the defendant 337,276 feet of spruce lumber. Allowing credits for hauling and other deductions, he claims a balance against the defendant of $3,973.76. As to this cause of action, the answer denies it, except as further stated, and avers the execution of the contract as set forth in the complaint. The remainder of the new matter averred in answer to the plaintiff's first cause of action is as follows:

"III.

"That defendant was ready, able and willing to and did fulfill the terms of said contract on its part to be performed and the plaintiff was unable to and failed to perform the terms of said contract upon his part to be performed.

"IV.

"That during the months of March to October, 1920, the defendant purchased from the plaintiff under the terms of said contract, lumber material of the value of $10,730.80, which sum was obtained by the defendant upon the sales of said material at a price in advance of the market price for said period of time, which lumber was dried by the

defendant before selling it, thereby enabling the defendant to procure a higher price than the quality of lumber provided for by the contract between the parties, and the plaintiff benefited thereby.

"V.

"That the necessary expenses of the defendant in handling such sales, as provided for by said contract between the parties, amounted to $16,865.27, and such sum has been advanced by the defendant to the plaintiff under said contract, making an overpayment of $6,134.47.

"VI.

"That plaintiff has not repaid to defendant any portion of said $6,134.47, and defendant is entitled to an accounting from the plaintiff of said sum of money."

It may well be doubted if these attempted averments of breach of contract by the plaintiff contain more than conclusions of law.

As a second cause of action the plaintiff avers:

"That immediately after the execution of said contract Exhibit 'A' the plaintiff at great expense purchased necessary equipment for his said sawmill and made extensive preparations to carry out on his part the terms of said contract and on the 8th day of April, 1920, was engaged in the performance of said contract and was in every way complying with the terms thereof, but that on the last mentioned date, the defendant without any cause or justification breached said contract by notifying the plaintiff that it would no longer continue to perform the same on its part, and that as to it the said contract was terminated. That pursuant to said notice the defendant actually refused to further perform said contract by advancing funds to the plaintiff or purchasing or marketing any of the products of his said mill or otherwise, and ever since has refused to be bound by any of the obligations thereof, or to perform the same in whole or in part in any manner."

He further claims in addition, that he has lost profits which he otherwise would have realized because the defendant refused to carry out the obligations on his part of the contract mentioned. He alleges the cost of manufacturing lumber and delivering it to the defendant to total $25.50 per thousand. He avers also that from April 8, 1920, the date upon which he charges the defendant refused to proceed under the covenant, until September 1, 1920, the price of lumber of the kind manufactured averaged $39.70 per thousand, leaving a net profit to him of $14.20 per thousand. On this basis and with the further postulate that he was able to and would have manufactured during that period 1,710,000 feet of lumber, he computes his loss of profits at $18,-641.65.

For the third cause of action, the plaintiff avers that shortly before the date of the contract, first mentioned, he had entered into another agreement with one F. R. Beals for the purchase from the latter of certain stumpage and a sawmill with its equipment whereby the plaintiff was to take possession of the mill, manufacture the timber purchased into lumber, pay Beals $5 per thousand until $20,000 is paid and afterwards, at the rate of $2 per thousand until the balance of the purchase price of $28,000 was paid. After various provisions in the Beals contract with relation to the use of roads and the extent of land to be logged and other things, the contract provides that the title to all the property contracted to be conveyed should remain in Beals until all the obligations of Rose should be faithfully performed and discharged; that Rose should have the right to sell the lumber manufactured but should at all times recognize the right and title of

Beals therein up to the sum of $5 per thousand feet of the first 4,000,000 feet and $2 per thousand in the second 4,000,000 feet and that said sales should be subject to the right of Beals to said sum and all money received by Rose from sales should be the absolute property of Beals up to the said amount. There are other provisions in the Beals-Rose bargain which it is not necessary here to detail. As to this last contract, the plaintiff claims in this action that by reason of the breach of the first contract on the part of the defendant, the plaintiff lost his entire investment in the Beals mill and stumpage agreement whereby he was damaged in the sum of $4,812.

The answer to each of the two claims for damages is a general denial of all the allegations of damages without affirmative defense. On a jury trial, a verdict was rendered, upon the first cause of action, in favor of the plaintiff for $3,973.76; on the second cause of action for loss of profits, for $4,104; and on the third cause of action, for loss of the Beals investment, for $4,812; totaling $12,889.76. On this verdict, a judgment was rendered in favor of the plaintiff from which the defendant appealed.

1. The defendant assigned as error, among other things, that the court refused to direct a nonsuit as well as a verdict on behalf of the defendant for the reason that the contract between the parties was void for want of mutuality. This contention cannot be upheld. The contract is mutual. The plaintiff agreed to sell the entire output of his mill for two years and covenanted to operate the mill continuously for that period. On the other hand, the defendant agreed to buy this same output. One covenant is the consideration for the other.

Mutual obligations are promulgated for the parties. A kindred subject was discussed in *Ward* v. *McKinley,* 97 Or. 45 (191 Pac. 322), where Mr. Justice McBride held that the contract was mutual.

2. Much stress was laid in argument by the defendant on some testimony given by the plaintiff where he said in substance that he never agreed to deliver any fixed quantity of lumber per month under this contract. The contention of the defendant is that this amounted to a construction of the contract by the plaintiff himself in a way that disclosed its want of mutuality. The argument is fallacious. True it is that the contract itself does not specify any particular number of feet of lumber to be delivered per month. The measure of the quantity to be delivered is the output of the mill resulting from a continuous run. What that might amount to probably would vary so that the plaintiff was justified in saying that no particular amount per month was agreed upon. The contract being in writing, its construction is a question of law for the court, with the result in this instance, that the contract is plainly one containing mutual covenants of the parties, one being the consideration for the other.

3, 4. So far as the first cause of action is concerned, the plaintiff is entitled to recover for what he did under the contract, of value to the defendant, although he did not comply with the contract in some respects, short of willful abandonment; *Tribou* v. *Strowbridge,* 7 Or. 156; *Steeples* v. *Newton,* 7 Or. 110 (33 Am. Rep. 705); *Todd* v. *Huntington,* 13 Or. 9 (4 Pac. 295); *Grove* v. *Island City M. & M. Co.,* 19 Or. 363 (24 Pac. 521); *Murray's Estate,* 56 Or. 123 (107 Pac. 19); *West* v. *McDonald,* 64

Or. 203 (127 Pac. 784); *Wuchter* v. *Fitzgerald,* 83 Or. 672 (163 Pac. 819); *Easton* v. *Quackenbush,* 86 Or. 374 (168 Pac. 631). Of course, this rule as to the recovery of what the plaintiff did that was of value to the defendant is qualified by the principle that the latter is entitled to counterclaim for damages which it suffered by reason of any breach of the contract by the plaintiff. In such a case however, the damages claimed by the defendant on which counterclaim is based must be averred. As stated, the defendant resists the first cause of action by the claim that it expended a balance of $6,134.47 more than it realized from the proceeds of all the lumber it received from the plaintiff. The triers of the fact, however, have found against the defendant on this contention and, there being evidence to support the verdict, we must give it effect.

5. It is urged that the court was wrong in refusing to instruct the jury as requested by the defendant, that the price to be paid for the lumber shipped was the net price remaining after the payment of all expenses in connection with the sale of said lumber and not the price which was established by any outside instrument based on any estimate of lumber to be shipped. There was in evidence a bill of sale from the plaintiff to the defendant, of certain lumber manufactured by the plaintiff, fixing a price for some 255,000 feet of lumber. It was competent for the parties to make such an agreement supplementary to the principal contract mentioned in the pleadings. The instruction requested denied the parties the right to do this. Besides this, the gross price for the lumber sold is ignored by this instruction and that affects the net price.

Still further, the net proceeds mentioned in the contract are not defined nor affected by the terms of that instrument further than that there should be a discount of 2 per cent for cash and 5 per cent commission. "All expenses in connection with the sale of said lumber," using the language of the requested instruction, are not mentioned in the contract.

6. As to the claims for damages, we note that the contract plainly specifies that the plaintiff agrees to sell and the defendant agrees to buy the lumber to be manufactured by the plaintiff. This constitutes a contract for the sale of a product yet to be manufactured. That the price to be paid is not expressly fixed at so many dollars per thousand by the terms of the contract does not alter the effect of that instrument. The defendant agrees to pay according to the formula prescribed for ascertaining the purchase price. That is certain which can be made certain, and in effect, the agreement is that the defendant shall pay what is the market price at the time and place of delivery, less 2 per cent discount for cash and 5 per cent commission.

7. Considering this contract as one for the sale of property for future delivery, the rule of general damages is that on refusal of the buyer to take the property, the seller is entitled to recover the difference between the contract price and the lesser market value of the goods at the time and place of delivery: *Krebs Hop Company* v. *Livesley,* 59 Or. 574 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758); *Russel Miller Milling Co.* v. *Bastasch,* 70 Or. 475 (172 Pac. 355); *Davis Lumber Co.* v. *Coats*

*Lumber Co.,* 85 Or. 542 (167 Pac. 507). It follows that if the contract price is identical with the market price, there can be no general damages beyond a nominal sum resulting from a breach of the covenant by the buyer. There is nothing in the complaint to show that, so far as general damages are concerned, the plaintiff might not have sold the lumber to someone else at the market price and thus have realized more by at least 5 per cent than if the defendant had performed its part of the compact.

8. If the plaintiff suffered any special damages, outside the pale of general damages as above described, it was incumbent on him to bring them to the notice of the court by appropriate averment; but there is nothing of that kind in the record.

9. According to the bill of exceptions also, it appears from the plaintiff's own testimony that instead of using the $3,000 for which it is admitted the defendant gave him its 90-day acceptance, to secure additional logging equipment and in construction of a loading dock at Tillamook, he used some of it for the building and equipment of bunk-houses and for payment of labor claims. We do not intend to hold that he was compelled to expend all the $3,000 for logging equipment and loading dock if the same was not reasonably necessary to enable him to carry out his contract, but it is a breach of the agreement to apply that special fund to the liquidation of other expenses.

10. Granting that the plaintiff has a sufficient allegation of performance of the contract on his part, it having been denied by the defendant, it was incumbent upon him to prove this averment and if his own testimony contradicted the allegations relied upon, it would amount to a failure of proof,

thus defeating his claim for damages. In not recognizing this principle, the court erred to the disadvantage of the defendant.

11. Further, as to the third cause of action, it amounts to no more than the plaintiff saying that he did not make enough money in his dealing with the defendant to enable him to pay his debt to Beals. With equal effect, he might have included his debts to the butcher, the baker and the candlestick maker. The contract sued upon bears no apparent relation to the previous covenant between the plaintiff and Beals and cannot be construed into a guaranty thereof.

Not as a basis of decision but as a criticism on pleading that may or may not be helpful in case of further litigation, the writer makes the following suggestions:

12. It is well settled that in declaring upon such a contract seeking to recover damages for its breach, the plaintiff must allege full performance or readiness and ability to perform on his part, so far as permitted by the defendant, before he can put the latter in default and claim damages as for the breach of the stipulation: *Davis Lumber Company* v. *Coats Lumber Company, supra,* citing *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Longfellow* v. *Huffman,* 49 Or. 486 (90 Pac. 907); *Mann* v. *Flynn,* 62 Or. 465 (125 Pac. 274).

13. The allegation upon which the plaintiff bases his claim for damages so far as performance on his part is concerned is that "On the 8th day of April, 1920, he was engâged in the performance of said contract and was in every way complying with the terms thereof." It may well be true that on that particular day he was acting in compliance

with his covenant. The averment is consistent with any number of violations of the contract committed by the plaintiff prior to that date. Semble, the complaint is defective in that respect.

·In making final disposition of the case, we remember that there are three causes of action attempted to be stated in the complaint. The situation is tantamount to one where the same plaintiff has instituted three actions against the defendant. In one of these actions we find no error apparent from the record. In the second, the plaintiff has proceeded upon a fallacious measure of damages and, in truth, his complaint does not state facts sufficient to constitute a cause of action for general damages; for one reason, because the market price of the lumber and the contract price are identical, so that there could be no difference between the two at the time and place of delivery. The third cause of action is defective in not showing any contractual relations between the two covenants, the one between the parties to this action and the other that in which the plaintiff and Beals were parties. The motions for nonsuit as to the second and third causes of action should have been sustained.

The judgment will therefore be affirmed as to the first cause of action allowing the plaintiff to recover from the defendant the sum of $3,973.76 with interest thereon since May 19, 1921, the date of the judgment appealed from, together with the costs and disbursements of the Circuit Court. The judgment is reversed as to the second and third causes of action and remanded to the Circuit Court with directions to enter judgment of nonsuit as to those causes of action and the defendant will recover the costs and disbursements of this court. The cause

is remanded for further proceedings in accordance herewith.

> AFFIRMED AS TO FIRST CAUSE OF ACTION. RE-
> VERSED AND REMANDED AS TO SECOND AND
> THIRD CAUSES OF ACTION. REHEARING
> DENIED.

McBRIDE, C. J., and HARRIS and RAND, JJ., concur.