Submitted on motion to dismiss appeal October 15, motion overruled November 17, 1925, argued on the merits December 13, 1927, affirmed January 17, rehearing denied February 14, 1928.

## HOLLYWOOD ORCHARDS COMPANY v. DENNIS, KIMBALL & POPE.

(240 Pac. 881; 263 Pac. 66.)

**Motions—Order Extending Time for Filing Transcript Deemed Filed if Presented to and Received by Clerk for Filing, Regardless of Placing File-mark Thereon.**

1. If order extending time for filing transcript actually was presented to clerk for filing and received by her for that purpose, it will be taken to have been so filed, even though file-mark was not placed upon it at such time.

**Motions—Evidence Held to Show Order Extending Time for Filing Transcript was Timely Presented to and Placed in Custody of Clerk for Filing.**

2. On motion to dismiss appeal on ground that order extending time in which to file transcript was not filed in time, *held*, that evidence showed that such order was timely presented to and placed in custody of clerk for filing.

---

1. See 23 R. C. L. 186.
2. See 21 R. C. L. 573, 577.

## ON THE MERITS.

**Pleading—Granting or Refusing Permission to Amend Complaint During Trial Rests in Court's Discretion.**

3. The granting or refusing to grant permission to amend a complaint during the course of trial is a matter addressed to court's discretion.

**Appeal and Error—Trial Court's Exercise of Discretion Relative to Granting or Refusing Permission to Amend Complaint During Trial is not Reviewable, in Absence of Abuse.**

4. The trial court's exercise of discretion relative to granting or refusing to grant permission to amend the complaint during progress of the trial is not reviewable, in the absence of abuse.

**Pleading—Court's Refusing Permission to Amend Complaint Held not Abuse of Discretion, Where Amendment was so General as not to Add to Issues.**

5. In action by a principal against a factor to recover for fruit spoiled in transit, the court's refusing permission to amend complaint *held* not an abuse of discretion, where the amendment was so general as not to add to the issues in the case.

**Factors—Commission Merchant to Whom Pears were Consigned was Required in Good Faith to Transact Principal's Business According to Custom of Place Where Acting, in Absence of Contrary Instructions.**

6. A commission merchant to whom pears were consigned by principal *held* required in good faith to transact his principal's business in accordance with the general usage and custom of the place in which he was acting, in absence of positive instructions to the contrary.

**Factors—Factor is Liable to Principal for Loss Resulting from Failure to Follow Instructions, Unless Without Fault He is Unable to Do so.**

7. Subject to certain qualifications and exceptions, such as in case of an emergency, a factor is bound faithfully to follow principal's instructions, and is liable to the principal for failure to do so, unless his failure is due to no fault of his own.

**Factors—Factor's Inability to Comply With Principal's Instructions will not Justify Departure Therefrom Except as Justified by Custom or in Emergency.**

8. A factor's inability to comply with principal's instructions will not justify departure therefrom except to the extent that departure is justified by custom or usage or by the emergencies of the particular case.

3. See 21 R. C. L. 573.
6. See 11 R. C. L. 764.
8. Emergencies justifying factor's disobedience of instructions, see note in 6 Am. St. Rep. 37. See, also, 11 R. C. L. 767.

**Factors—Factor must Inform Principal of All Facts and Circumstances Relating to Consignment Warranting Taking Protective Measures.**

9. It is the duty of a factor to inform his principal of all facts and circumstances relating to the consignment which may make it necessary for the principal to take measures for the protection of his interests.

**Factors—Factor must Protect Goods as Reasonably Prudent Man Would Protect His Own, in Absence of Instructions.**

10. It is the duty of a factor, in the absence of instructions, to care for and protect the goods which have been consigned to him with such care as a reasonably prudent man would take of his own property in a similar situation.

**Factors—Whether Loss of Pears was Factor's Fault in Failure to Place in Cold Storage When Delayed in Shipment Held for Jury.**

11. In suit by principal against a factor upon an alleged contract to place pears which were shipped to the factor in storage if necessary to protect them, whether loss of pears was factor's fault because of his failure to place them in storage when delayed in shipment *held* for jury.

**Factors—Instruction in Principal's Suit Against Factor for Loss of Pears in Transit, Permitting Finding of Agreement to Put in Cold Storage, and Modification Thereof, Held Proper Under Evidence.**

12. In a suit by a principal against a factor, to whom he had consigned pears, for loss of such pears from spoiling in transit, an instruction permitting the jury to find an agreement between principal and factor that factor would place the fruit in cold storage if necessary, and permitting them to find modification of such contract, *held* proper under evidence.

**Trial—In Principal's Suit Against Factor for Pears Spoiled in Shipment, Instructions Relative to Care Generally Required of Factors Held Properly Refused as Departure from Sole Issue of Care Under Contract.**

13. In suit by a principal against a factor for damages due to pears having spoiled in shipment, instructions relative to the care generally required of factors *held* properly refused as a departure from the sole issue of whether the care required of the factor by an alleged contract had been given.

---

Appeal and Error, 3 C. J., p. 694, n. 54; 4 C. J., p. 479, n. 66, p. 602, n. 32, p. 800, n. 40.

Factors, 25 C. J., p. 357, n. 7, 8, p. 359, n. 38, p. 360, n. 56, 57, 58, 60, 61, p. 362, n. 90, p. 363, n. 1, 2, 12, p. 405, n. 35.

Pleading, 31 Cyc., p. 399, n. 83.

Trial, 38 Cyc., p. 1619, n. 38, p. 1633, n. 12, p. 1711, n. 19.

10. Duty of factor with respect to care and protection of goods entrusted to him, see note in 17 A. L. R. 538. See, also, 11 R. C. L. 767.

From Jackson: C. M. Thomas, Judge.

In Banc.

Motion Overruled.

For the motion, *Mr. Porter J. Neff.*

*Contra, Messrs. Newbury & Newbury.*

PER CURIAM.—1, 2. This is a motion to dismiss the appeal. On the twentieth day of February, 1925, the Circuit Court granted the appellant until April 1, 1925, within which to file its transcript. On the thirty-first day of March, 1925, another order was granted extending the time to and including May 1, 1925, within which to file the transcript. The motion calls attention to the fact that there was another order extending the time to June 1, 1925, but that such order was not filed in the office of the clerk of the Circuit Court of Jackson County, Oregon, or otherwise, until May 13, 1925, and therefore it never became effective. The order which was made on April 28, 1925, bears the filing mark of May 13, 1925, and therefore, upon the face of it, it would appear that the appellant is out of court; but the appellant's counsel presents his own affidavit to the effect that on April 28, 1925, he made a special trip to Grants Pass, procured the order on that date, and presented it to the clerk, who received it for filing. If it was actually presented to the clerk on the twenty-eighth day of April, 1925, for filing and received by her for that purpose, it will be taken to have been so filed, even though the filing mark was not placed upon it at the time.

The affidavit of counsel for the appellant is clear and emphatic that he procured the order on the twenty-eighth day of April, 1925, and actually presented it to the clerk for filing on that date. The affidavit of the clerk is to the effect that business in the office is very much congested and that there is an insufficient number of deputies in the office; that it might have been placed among the files of the case on the same day as the date it bears and inadvertently mislaid on the desk and the file-mark placed on it as May 13, 1925, through inadvertence.

The affidavit of Mattie Stevens, deputy clerk, is to the same effect, stating that there is great congestion in the clerk's office with few limited conveniences for the conduct of the office and for the care of instruments that are presented; that often instruments and orders are mislaid; that it is entirely possible and probable that the particular order referred to in this case was, through inadvertence, mislaid at the time it was presented at the office without being formally filed; and that when asked to certify to the transcript, possibly at said time the order may have been found among the files and the filing mark then placed upon it as of the date when it was discovered. She states, however, that there is upon the order, inserted in the filing mark the words ''Apri.-28,'' in the handwriting of another deputy.

In view of the affidavit of appellant's counsel and the admissions by the authorities in the clerk's office, and the possibility and probability of such a mistake having been made, we are inclined to hold that the order was actually presented to the clerk for filing and placed in her custody on the twenty-eighth day of April, 1925, as would seem the natural thing for ap-

pellant's counsel to have done after having taken the pains to make a special trip to an adjoining county in order to have it signed by the judge.

The motion to dismiss will be overruled.

MOTION OVERRULED.

---

### ON THE MERITS.

(263 Pac. 66.)

This is an action for damages in the sum of $1,328.75 for the breach of a contract. The cause was tried before the court and a jury and a verdict rendered in favor of defendant. From a judgment on the verdict dismissing the action plaintiff appealed.

The plaintiff is a Utah corporation and the defendant is a New York corporation. The plaintiff, as a ground of its action, alleges in substance the following facts: On October 3, 1922, plaintiff consigned to the defendant two carloads of pears consisting of 1,063 boxes at Medford, Oregon, for shipment to London to be sold by the defendant. It was understood and agreed that the pears were to be shipped by the defendant to Portland, Oregon, and plaintiff and defendant agreed that if the steamer, upon which the same should be shipped, was not in Portland at the time of the arrival of the pears, that the pears should be placed in cold storage in Portland, Oregon, until the arrival of the steamer; and plaintiff should allow defendant nine cents per box for the cold storage charges. The pears were shipped to Portland on October 5, 1922, and arrived in Portland on October 7, 1922, about 1 o'clock A. M. That at the time of the arrival of the pears the steamer "Gothic Star," upon which they were to be shipped, had not yet ar-

rived and did not arrive until on or about October 14, 1922.

Defendant failed and neglected to comply with its agreement with the plaintiff to put the pears in cold storage and allowed them to remain on the dock from the date of their arrival, October 7th, to the time when the steamship company proceeded to load them on October 14, 1922.

The pears, when they arrived in Portland, were in excellent condition for shipping from Portland; that because of the fact that defendant in violation of said agreement to place the pears in cold storage, allowed them to remain upon the dock, they became overripe and were not fit for shipment when loaded on the steamer, all of which was well known to defendant and unknown by the plaintiff. The reasonable value of the pears is alleged to be $1.25 per box f. o. b. cars Medford, Oregon. Because of the failure of the defendant to comply with the terms and conditions of its agreement to place said pears in cold storage in Portland as alleged, the pears were entirely lost to plaintiff and the plaintiff received no financial return therefor, as at the time of their arrival in London they were a total loss and were dumped into the ocean. The plaintiff demands judgment for the value of the pears.

The defendant, by its answer, admits that the pears were to be shipped by the defendant to Portland, and were shipped on October 5, 1922. That they were allowed to remain on the dock in the City of Portland from the date of their arrival, October 7th, to the time when the steamship company proceeded to load the same, on October 14th. That the loading was completed on October 17th. Admits that the pears

when they arrived in the City of Portland were in
excellent condition for shipment to London; admits
the alleged value of the pears and that the plaintiff
received no financial returns for them; that they were
a total loss; and that because of their overripe con-
dition when they arrived in London they were
dumped into the ocean.

Defendant denies the contract alleged and the other
allegations of the complaint.

It appears that plaintiff is engaged in the business
of growing pears near Medford, Oregon, where it is
represented by Mr. W. E. Brayton as its agent in
managing its orchard. Mr. P. C. Cripps, the secre-
tary of the plaintiff, visits Medford and gives in-
structions to Mr. Brayton about twice a year. The
defendant is a commission merchant engaged in the
business of selling fruit with its office at London,
England, and has a representative, named C. E. Barr,
at Medford, Oregon, who solicits business and assists
in forwarding products to the defendant. Defend-
ant's Medford representative, through one Johnson,
forwarding agent, engaged space for the shipment of
the pears on the steamship "Gothic Star," which was
scheduled to arrive in Portland, October 7th, to load
preparatory to sailing to London.

The plaintiff packed the pears on October 4th and
loaded them at Medford, Oregon, in ordinary box or
furniture cars, which Mr. Brayton, its agent, ordered.
They were shipped over the Southern Pacific railway,
consigned to the dock of the steamship company.
The testimony indicated that it was warm weather
when the pears were shipped from Medford to Port-
land and that they were warm when they arrived.
The shipment was so timed that the pears arrived on

October 7th, the date when the steamship was due to arrive in Portland, but the "Gothic Star," which was at Seattle, was delayed by a strike and by foggy weather, and when the pears reached the dock on Saturday evening, the steamship had not yet arrived. Johnson, the forwarding agent, upon inquiry of the steamship officials, was informed that the ship would arrive on the following Tuesday. Therefore, the pears were unloaded from the box-cars and were piled on the north side of the covered dock of the steamship company next to a concrete wall, and over the water which, the testimony tended to show, was a cool place, to await the arrival of the boat.

There was a cold storage building in the course of construction on or near the dock, but not completed so as to receive fruit. There were no cold storage facilities at or near the dock in question. In order to place the pears in cold storage it would have been necessary to have switched them back a distance of about ten miles to a cold storage house near the Union depot in Portland, and there unloaded them into the cold storage house, which would have required approximately twenty-four hours, and the same length of time would have been required to have returned the pears from the cold storage to the dock where they could be loaded into the ship.

Defendant asserts that the pears being packed in boxes and wrapped in paper it would have required two or three days in cold storage before the pears would have gotten cold, and claims that to take pears which are warm and put them in cold storage for a few days only and then bring them out, permitting them to become warm again for a period of twelve to twenty-four hours before again placing them in

cold storage, is more injurious to the pears than to leave them in a uniform moderately warm temperature.

When Tuesday arrived the boat was again delayed. The steamship officials informed Johnson that the boat would arrive the next day. The same thing occurred on Wednesday, and each day thereafter until October 14th, when the boat put in an appearance. Each day Johnson, the forwarding agent, was assured by the steamship officials that the boat would arrive next day. When the boat arrived the pears were the first freight loaded.

At the time the ship arrived, and before the pears were loaded into it, it was found that some of them had begun to show signs of ripening in the form of softness near the stems. Some doubt was expressed by the steamship officials as to whether the pears were in a condition to stand the trip to London under cold storage. Johnson, the forwarding agent, was sent for and further examination of the pears was made, and after advising with the ship's officers it was decided by all of them that the pears would stand the journey.

It developed, however, that the pears were not, in fact, in a condition to stand the long journey. During the arrangement for the shipment and at the time of receiving the pears at the dock in Portland, Johnson, the forwarding agent, wrote to the defendant at Medford, giving all of the details of unloading the pears from the cars, immediately upon their arrival at the dock, and placing them against the concrete fire wall on the north side of the dock, stating: "While this dock is not a cold storage dock, yet with the high ceilings and side doors and further, that it is directly

over the water, will keep the fruit in good shape prior to its going on to the ship the first of the week."

On October 14th Johnson wrote the defendant at Medford, informing it that the pears were loaded in an advantageous position on the ship, and in regard to the pears seeming to be soft and the consultation with the ship's officers and also, suggested that the pears be disposed of without delay as soon as they arrived at their destination.

The letters written by Johnson, and all of the correspondence in regard to the shipping of the pears, Mr. C. E. Barr, the defendant's representative, testified he showed to plaintiff's representative Mr. Brayton, soon after the receipt of each letter, as well as the letters of instruction written by the defendant to Johnson, the forwarding agent.

Mr. P. C. Cripps, secretary of the plaintiff, testified as a witness upon the trial of the case that he was at Medford in September, 1922, and had a conversation with Mr. Barr as a representative of defendant in regard to the shipment of the pears to London, England. He states thus:

" * * and we told him at that time we had decided to ship two cars of fruit to London, and we discussed the freight and the storage, and, as this was a new market that we wanted to develop, we wanted to use every precaution to take care of the fruit, and he said everything would be done to put it there in good shape.

"Q. Was anything said on that occasion as to whether or not the pears should be put in cold storage, or what should be done with them when shipped? A. Mr. Brayton raised the question that if the pears got there before the boat they would have to be taken care of. We didn't want them to overheat and at that time he said there would be a charge of eight or

nine cents for the storage of the pears, and we told him to use every precaution and take care of them and put them in cold storage."

The testimony on the part of defendant tended to show that Mr. Barr consulted with Mr. Brayton, who was the only representative of the plaintiff at Medford at the time of the shipment of the pears, as Mr. Cripps left soon after the conversation. Mr. Brayton advised Mr. Barr that he did not want the pears to be put in cold storage. It was too expensive. And that there was no agreement between the plaintiff and the defendant that the pears should be put in cold storage. It was stipulated, as evidence, by counsel for the respective parties that if the officers of the steamer "Gothic Star" were witnesses they would testify that at the time the pears were loaded upon the steamer "Gothic Star," "the said pears were in a ripened condition, and that the log of the said steamer, made at the said time, shows that the same were in a ripened condition."

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Newbury & Newbury,* with an oral argument by *Mr. Gus Newbury.*

For respondent there was a brief and oral argument by *Mr. Porter J. Neff.*

BEAN, J.—After the testimony of Mr. Cripps, secretary of the plaintiff, to the effect that Mr. Barr, defendant's representative, had agreed not only that he would put the fruit in cold storage in Portland, but would use every precaution to see that the pears arrived in marketable condition, counsel for plaintiff

moved to amend its complaint so as to allege that the defendant agreed not only to place the pears in cold storage upon their arrival in Portland, but also in addition agreed to use every precaution so that they would arrive in London in marketable condition. Counsel for defendant offered to accede to the motion of plaintiff, if plaintiff would consent that defendant withdraw the admission in its answer, to the effect that the pears were in excellent condition for the shipment to London when they arrived in Portland. Counsel for plaintiff declined to do this, and the court denied plaintiff's motion to amend the complaint. Plaintiff assigns this ruling as error.

3–5. It is a well-settled rule in this state that the granting or the refusing to grant permission to amend a complaint during the course of the trial is a matter addressed to the discretion of the court and such discretion will not be reviewed except in case of its abuse: *Longfellow* v. *Huffman,* 49 Or. 486 (90 Pac. 907); *Taylor* v. *Brown,* 49 Or. 423, 425 (90 Pac. 673); *Wallace* v. *Baisley,* 22 Or. 572 (30 Pac. 432).

The proposed amendment to the complaint was not reduced to writing and it is difficult to determine just what it was intended to embrace. The offer to allege that the defendant agreed to use every precaution so that the pears would arrive in London in marketable condition, without any allegation as to wherein the defendants failed to use every precaution tending toward that event, would not, as far as we can see, add to the issues in the case. It is a statement too general for an allegation of the pleading, and the trial court evidently considered that the officers of the defendant were not in attendance upon the trial and had no notice of such an issue, as the amendment suggested, or any fair opportunity to meet the same.

We cannot say that the court erred or abused its discretion in the matter.

In order to avoid a misunderstanding it may be well to refer to a few general rules of law:

6. It was the duty of the defendant as a commission merchant, or factor, to whom the pears were consigned by the plaintiff, to transact the business of its principal in good faith, in accordance with the general usage and custom of the place in which he acts, unless he receives positive instructions to the contrary.

7-10. Subject to certain qualifications and exceptions, such as in case of an emergency, it is a well-settled general rule that a factor is bound faithfully to follow the directions of his principal, and that he will be liable to his principal for such loss and injury which may result from his failure to do so. Where a factor uses reasonable diligence to comply with his instructions and without any fault on his part is unable to do so, he is not liable to his principal for a failure to carry out the instructions. Inability to comply with such instructions will not justify a departure therefrom, except to the extent that it is justified by custom or usage, or by the emergencies of the particular case. Where by some sudden emergency or intervening necessity, or other unexpected event, it becomes impossible for the factor to comply with the exact terms of his instructions, he is not liable if in good faith he departs therefrom, although such departure turns out to the disadvantage of his principal. It is the duty of a factor to inform his principal of all facts and circumstances, relating to the consignment, which may make it necessary for the principal to take measures for the pro-

tection of his interests. It is the duty of a factor, in the absence of instructions, to care for and protect the goods which have been consigned to him with a reasonable degree of prudence and diligence, that is, such care as a reasonably prudent man would take of his own property in a similar situation. Where a consignment is made without instructions, and the factor fails to exercise reasonable prudence and diligence in caring for the goods, he is liable for any loss or injury that results therefrom: 25 C. J., p. 357 et seq., §§ 32, 36, 38, 39, 43, 44.

Plaintiff assigns error in regard to the instructions given by the court to the jury and also requested a large number of instructions to the jury, many of which were covered by the charge given by the court. Plaintiff assigns error in the refusal to give requested instructions which were not given.

It will be noticed that the complaint is based upon the failure of the defendant to carry out the contract alleged, in regard to putting the pears in cold storage. After referring to the issues and the alleged contract, the court charged the jury as follows:

"If you find from the evidence that the loss of the fruit was due to the failure of the defendant, under such contract, to place the fruit in cold storage at Portland, Oregon, then you will find a verdict for the plaintiff for the amount prayed for in its complaint, to wit: $1,328.75. * * "

Each of the parties at the trial of the cause gave their version of all that was said or done in relation to the consignment and shipment of the pears and the care that was bestowed upon them after they arrived in Portland, and expert testimony was introduced as to the effect it would have upon pears in putting them

into cold storage for a short time and then taking them out.

11. There was something in the nature of an emergency existing in Portland when these pears arrived there late in the evening on Saturday and there was no cold storage facilities at the dock, or within about ten miles distance therefrom; and we think that the jury was competent to decide from the evidence under the instructions of the court, whether the loss of the fruit was due to the fault of defendant in failing to place it in cold storage at Portland or not. It is very doubtful if the jury believed from the evidence that the pears would have arrived in London in marketable condition, if they had been placed in cold storage in Portland, as the fruit was on the voyage from Portland to London for about seven weeks, after having been shipped during warm weather from Medford to Portland in common cars without refrigeration.

12. The plaintiff complains of an instruction of the court to the jury, to the effect, that if they found the contract was made between the parties on September 8, 1922, for the shipment of these pears and that at a later time either party made to the other a statement of his understanding of the terms of the contract, which statement was acquiesced in by the other party, the parties could in that manner modify the original agreement. The plaintiff contends that there was no evidence upon which to base such instruction.

This condition takes us to the question of the submission of all of the testimony relating to the preparation for, and the handling of the pears in Portland, which was minutely detailed in correspondence be-

tween the defendant and Johnson, the forwarding agent, and as the testimony on behalf of defendant indicated, was submitted to the agent of the plaintiff in due time and he then made no objection thereto. The court by its instruction placed the whole of the testimony relating to the details and the conduct of the parties in shipping and caring for the pears before the jury, and we think properly so.

13. The plaintiff complains of the failure of the court to give requested instruction to the purport, "that the defendant in this case was bound to exercise that degree of diligence, in the care of the fruit, which the nature of its employment makes it reasonable to be expected." And the want or failure to exercise such care and attention by the defendant is negligence, and if it causes loss then the party guilty of such negligence is liable for the full amount of such loss as the proximate result of such negligence.

The plaintiff was not entitled to the requested instruction for two reasons: First, the requested instruction is a departure from the issues made in the case; second, it wholly leaves out the question of whether or not the defendant followed the instructions of the plaintiff in the matter of caring for the pears, and does not apply to the negligence as to lack of cold storage only but to any negligence that might be thought of.

The plaintiff also requested the court to charge the jury, to the effect that if the ripening of such fruit, if they found from the evidence the fruit ripened while on the docks, could have been prevented by placing the same in cold storage at Portland, Oregon, and that placing the same in cold storage was reasonably necessary to prevent the ripening of the fruit

and the loss of the same, then it was the duty of the defendant, irrespective of any contract, to place the fruit in cold storage in order to preserve it for shipment to London. We repeat, there was no allegation in the complaint that the defendant failed to exercise reasonable care and prudence in caring for the pears, or that the exercise of reasonable care and precaution would have required the pears to be placed in cold storage in Portland. The charge, as requested, would warrant the jury in speculating afterward, as to what would have been the result of placing the fruit in cold storage, instead of finding from the testimony what the plaintiff's agent should have done under the circumstances existing at the time, acting as a reasonably prudent man, and would have permitted the jury to find that it was the duty of the defendant to place the fruit in cold storage irrespective of any contract, and contrary to the instructions of the plaintiff, not to put the fruit in cold storage at Portland.

The instruction requested would not fairly submit the issues made by the pleadings to the jury, or the question developed by the evidence, and was properly refused.

We think the charge given by the court to the jury, read as a whole, fairly submitted the cause to the jury for their consideration. The charge given, referring to the contract between the parties, was due to the invitation and allegation of the plaintiff in its complaint in basing its cause of action upon a breach of the contract.

The jurors residing in a fruit country are better able to decide the question as to handling these pears than the court would likely be. The plaintiff com-

plains that at the time the pears were loaded in the steamer they were not in suitable condition for shipment to London and that they should not have been shipped. Whether there was error of judgment in so shipping the pears is not made an issue in this case. The plaintiff's complaint is not based upon that fact and the question is not before this court.

Finding no reversible error in the record, the judgment is affirmed.   AFFIRMED.   REHEARING DENIED.

RAND, C. J., and BELT and BROWN, JJ., concur.