Argued October 10, affirmed December 7, 1972

TRACHSEL, *Appellant, v.* BARNEY ET UX,
*Respondents.*

503 P2d 696

*Fred A. Granata,* Portland, argued the cause for appellant. With him on the briefs were Ringle & Herndon, Gladstone.

*John C. Anicker, Jr.,* Oregon City, argued the cause for respondents. With him on the brief were Jack, Goodwin & Anicker, Oregon City.

HOWELL, J.

Plaintiff filed this suit seeking specific performance of a contract to purchase real property or, in the alternative, to recover damages in the event specific performance is denied. The trial court entered a decree dismissing the suit, and plaintiff appeals.

On October 13, 1969, plaintiff and defendants entered into an agreement whereby defendants agreed to sell to plaintiff a tract of land in Oregon City. The

agreement provided that the sale was conditional upon the plaintiff securing a "zone change permitting construction of multi-family dwelling consisting of not less than one hundred (100) units which purchaser will apply for forthwith." The plaintiff was allowed until February 18, 1970, to obtain a zone change.

Contemporaneous with the above agreement and as part of the consideration for the sale of the land, the parties agreed that the plaintiff would construct for defendants a residence and a shop on other premises owned by the defendants. The agreement stated:

"It is further agreed between the parties hereto that construction on said residence and shop shall start at the same time as construction starts on the property being acquired by second parties from first parties, but no later than May 1, 1970. * * *"

The zoning was changed; however, only 89 units were permissible on defendants' land. Plaintiff purchased from a third party an adjacent tract which was sufficient to allow 10 more units. (Apparently the parties have treated a 99-unit apartment as the equivalent of 100 units.)

Plaintiff's application for a zone change on defendants' tract of land was granted on March 4, 1970. The zone change on the second tract purchased by plaintiff was granted on May 21, 1970.

The construction contract required the plaintiff to design the plans and specifications for the residence and shop and submit the plans to the defendants for their approval.

Construction on the house and shop had not been started by July 10, 1970, and on July 13 the defendants advised plaintiff that they were cancelling the con-

tract for non-performance. Two or three days later plaintiff started to build forms on the site but was "run off" by the defendants.

The trial court stated the following in a letter opinion:

"Although the plaintiff would not have been required to perform the building of the house and shop by May 1st, 1970, the evidence shows that plaintiff utterly failed in properly preparing plans and specifications and in taking any constructive steps to perform the contract up to and including the middle of July, 1970. The actions of the plaintiff in submitting certain plans and staking out and building forms, were far short of any constructive effort to perform and constituted a mere token attempt to perform."

Plaintiff seeks to excuse his delay in starting the construction of the house and shop on the grounds that defendants were first required to survey the property to determine its boundaries; defendants were to perform certain excavation and grading work preliminary to the construction; and defendants would not approve the plans.

The defendants testified that they were not satisfied with the revised plans for the house which were presented to them on the first of July. At that time no plans had been prepared for the shop. In fact, one of plaintiff's employees engaged to prepare the plans for the house had not even heard of plans for the shop at this time. On the 10th of July some of plaintiff's employees came to the property to set stakes for the start of the construction. Defendant W. A. Barney testified:

"Q Now, you were unhappy with the job they did staking the house out, so why don't you tell us what happened there?

"A They brought no level, transit level, no

tape, no pencil, no paper, but they did have a plumb bob that evidently somebody left rolling around in their car. But that's all they had to stake it out.

"I says, 'How are you ever going to stake out a house with no equipment?' I says, 'I am not the general contractor.'

" 'Oh,' this young fellow says, 'I'll just stand up and look down at that stake down there and I'll look right at the middle of it and hold my hands out and string it out and that will be square.'

"Now, if that's square from an ordinary human being, I'm wrong."

■ We will assume that plaintiff could be excused for not starting construction by May 1, 1970, as required by the contract, because of the necessity of securing a zone change. However, we agree with the trial court that plaintiff was unreasonably dilatory in preparing the plans and specifications for the house and shop and in starting construction as late as July, 1970. Plaintiff's failure to perform constituted a material breach and excused performance by defendant. *Crocker et al v. Weil et al*, 227 Or 260, 361 P2d 1014 (1961); *Prime v. Prime*, 172 Or 34, 139 P2d 550 (1943). We therefore affirm the trial court's decision to refuse specific performance to plaintiff.

The only remaining issue is whether plaintiff is entitled to recover on *quantum meruit* for the reasonable value of his services and of the materials expended by him in preparing for the construction of the house and shop. Plaintiff states his position as follows:

"A party to a contract, even though it is entire, who has performed part of it according to its terms and is prevented by the other party from completing the contract, is entitled to compensation for the work performed and materials furnished."

The primary difficulty with plaintiff's argument is that plaintiff, not defendants, breached the contract. However, we do not believe that plaintiff has correctly stated the applicable rule of law. It is true that in *Dickson v. Emmerson,* 154 Or 558, 562, 61 P2d 439 (1936), this court stated that one cannot accept the benefit of labor and materials used in the part performance of a contract, breach the contract, and then refuse to pay for the reasonable value of the labor and materials. *See also State v. U.S. Fidelity Co.,* 144 Or 535, 548, 24 P2d 1037 (1933).

██ The right to recover for part performance is not restricted to those cases where the other party has breached the contract. We have held in *Rose v. U.S. Lumber & Box Co.,* 108 Or 237, 246, 215 P 171 (1923) and in *Bradfield v. Bollier,* 169 Or 425, 432, 433, 128 P2d 942 (1942), that a party may recover the reasonable value of material furnished and work performed although he himself did not comply with the contract so long as his abandonment or breach of the contract was not wilful. The right to recover the reasonable value is subject to the qualification that the work performed be "of value" to the owner, as in *Rose,* or that it be "substantially beneficial" to the owner, as mentioned in *U.S. Fidelity.*[1]

---

[1] In some cases the courts have required a showing of "net benefits" to the owner and in others that the contractor is entitled to recover unless the work performed is of "no benefit to the owner." 12 Williston on Contracts (3rd ed) 238, 245, § 1475.

The rule allowing the contractor to recover for the reasonable value of work performed is qualified by the principle that the owner is entitled to counterclaim for any damages suffered as a result of the other's failure to completely perform. Rose v. U.S. Lumber & Box Co., 108 Or 237, 247, 215 P 171 (1923). *See also* 17 Am Jur 2d 828, Contracts § 383; 12 Williston on Contracts, **supra.**

In the instant case the plaintiff seeks recovery for the following:

| | |
|---|---:|
| Earnest money paid | $ 100.00 |
| Application fees for zone change | 150.00 |
| Services of Robert Cook [in securing zone change] | 450.00 |
| Building permit fee | 102.00 |
| Drafting of plans | 960.00 |
| Other labor | 228.00 |
| Materials | 486.88 |
| | $2,476.88 |

■ The plaintiff's claim must fail for several reasons. First, there was no showing that the amounts expended for the labor and materials were reasonable. More importantly, however, we do not believe that the work was beneficial to the defendants. Some of the labor and the material expended in laying the forms for the construction occurred *after* defendants gave plaintiff notice of the cancellation of the contract. Defendants contend that the forms were not placed in the correct location and were not square with each other. Whether the re-zoning of defendants' land to multiple family dwelling construction is beneficial to defendants is a matter of speculation. Defendants' land will not allow the construction of 100 units, and plaintiff testified that he considered any amount less than 100 to be uneconomical.

The trial court found that the preparation of the plans and the staking out and building of forms constituted only token performance. Under the circumstances of the case, while we consider the record de novo, we give substantial weight to the findings of the trial court.

Affirmed.