Argued October 9, 1978, affirmed as modified and remanded
June 26, petition for rehearing denied September 5, 1979

CITY OF PORTLAND ex rel
DONOHUE & FLESKES CORPORATION,
*Respondent/Cross-Appellant,*
*v.*
HOFFMAN CONSTRUCTION COMPANY et al,
*Appellants/Cross-Respondents.*
(No. 403-515, SC 24760)

HOFFMAN CONSTRUCTION COMPANY,
*Appellant,*
*v.*
ARGONAUT INSURANCE COMPANY et al,
*Respondents.*
(No. 411-542, SC 24760)
596 P2d 1305

[790-a]

Ellis J. Horvitz, Encino, California, argued the cause for appellants/cross-respondents Hoffman Const. and Seaboard Surety and for appellant Hoffman. With him on the briefs were John L. Schwabe, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Jack L. Kennedy of Kennedy, King & McClurg, Portland, and Gerald R. Pullen, Portland, argued the cause and filed briefs for respondent/cross-appellant, and for respondent Donohue & Fleskes Corporation.

Paul R. Meyer of Kobin & Meyer, Portland, argued the cause for respondent Argonaut Insurance Company. With him on the brief was Elizabeth Yeats, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Bryson,* Lent,* and Linde, Justices.

HOWELL, J.

---

* Bryson and Lent, JJ., did not participate in this decision.

## HOWELL, J.

These two actions, consolidated for trial and on appeal, arise out of the construction of the City of Portland's secondary sewage treatment facilities. Hoffman Construction Company (Hoffman) was the general contractor on the project. Seaboard Surety Company (Seaboard) is its surety. Donohue & Fleskes Corporation (Donohue) was a subcontractor hired by Hoffman to perform mechanical, piping, and equipment work on the project. Argonaut Insurance Company (Argonaut) is its surety. The City of Portland (City) is a party because Seaboard executed a public performance bond to assure the City of Hoffman's faithful and complete performance of its general contract with the City. City brought the action, Multnomah County Circuit Court No. 403-515, "on behalf and for the use and benefit of DONOHUE."

Donohue's claim in quantum meruit against Hoffman alleged that Hoffman breached the subcontract by failing to discharge certain of its contractual obligations and by wrongfully terminating the subcontract. Donohue further alleged that Hoffman's breach of the subcontract obstructed Donohue's work, "greatly increasing the cost thereof to Donohue * * *." Donohue sought to recover the reasonable value of the "labor, services, material and equipment furnished," together with interest from the time Hoffman allegedly terminated the contract.

Hoffman's claim against Donohue alleged damages for extra expenses incurred that were caused by Donohue's alleged breach of the contract in several respects. Hoffman also, in addition to its counterclaim, filed a separate action against Donohue, case No. 411-542, but this action raises the same issues and seeks the same damages as its counterclaim.

The jury returned separate verdicts in each case in favor of Donohue and against Hoffman. Accordingly, the trial court entered judgment in favor of Donohue,

together with attorney fees. The trial court refused to award Donohue pre-judgment interest as demanded. Hoffman appeals from the judgment. Donohue cross-appeals from the trial court's failure to award pre-judgment interest.

The facts of the case can be briefly stated as follows. Hoffman was the general contractor for the construction of City's secondary sewage treatment facilities in January, 1972. Hoffman contracted with Donohue to perform the mechanical, piping, and equipment work on the project for the sum of $1,400,000.

The first task in the project, which was Hoffman's responsibility, was to dewater the swampy building site. Hoffman ran into unexpected difficulties in dewatering, which caused six months' delay in the project. The mud on the site was a persistent problem. In addition to the dewatering difficulties, there was evidence that Hoffman failed to provide a sufficient schedule for doing the work; failed to coordinate the work of the various subcontractors; failed to provide adequate working conditions for Donohue; and actively interfered with Donohue's attempts to do its work. There was contrary evidence that many of Donohue's problems were the result of Donohue's own failure to do its job in a workmanlike manner. The disputes between the parties finally led Hoffman to terminate the subcontract on March 5, 1974. These actions followed.

■ Hoffman contends that it was entitled to a directed verdict on the ground that Donohue's evidence of the value of its performance was not sufficient to support an award in any particular amount. As always in reviewing the denial of a motion for directed verdict, we consider the evidence in the light most favorable to the other party. *Simpson v. Sisters of Charity of Providence,* 284 Or 547, 588 P2d 4 (1978).

Donohue's evidence showed the costs incurred in performing the job until Hoffman terminated the

contract, with computations showing an additional allowance of 15 percent of the total for overhead and 10 percent for profit. Mr. Donohue testified that the amounts expended were reasonable and were necessary in order to perform the job. Mr. Fleskes testified to the same effect, and also that the percentage allowances for overhead and profit were customary. There was also supporting testimony by Donohue's accountant.

■ Hoffman argues, however, that there was uncontradicted evidence that at least some of Donohue's extra work was made necessary by its own mistakes, and that Donohue failed to present evidence which would permit the jury to determine which of Donohue's costs were attributable only to the requirements of the job and to causes for which Hoffman was responsible. As a consequence, Hoffman argues, Donohue failed to meet its burden of proof, and the case should not have been submitted to the jury.

We have examined the portions of the record cited by Hoffman in support of this argument and are convinced that with one exception the testimony did not require the jury to believe that Donohue was at fault. The single exception involves an error by Donohue in the preparation of some construction drawings. The evidence cited does not show what, if any, additional work was required as a result of this error. We have not searched the record for other evidence on that question. If, indeed, this error caused some of Donohue's additional costs, and if Donohue failed to prove the amount of those costs so that the jury could deduct that amount from the verdict, Hoffman did not call this lapse in the proof to the trial court's attention. The motion for a directed verdict was on the general ground that there was no evidence that the costs which Donohue proved "were in fact a reasonable value of the work they performed as opposed to just overwork on their own behalf or extra expenditures that they made themselves."

The error in the construction drawings was just one of the many detailed items about which the jury heard evidence over a period of six weeks. Donohue's theory at trial was that it was entitled to recover the reasonable value of all of its work. Proof of total costs was presented, therefore, without an attempt to allocate specific costs to specific parts of the job. Donohue's witnesses testified that such an allocation would be extremely difficult.

We discuss the general question of the proper measure of recovery later in this opinion. Reserving that question, the only issue presented by this assignment of error is whether the trial judge was required to direct a verdict for Hoffman on the entire case on account of a failure of proof, which was never pointed out to him, with respect to this single, apparently minor, episode. He was not.

Hoffman also contends that it is, in any event, entitled to a new trial because of a number of alleged errors in the jury instructions. We consider first those claims of error directed at the instructions describing the permissible grounds for quantum meruit recovery.

Hoffman's position is that by giving certain instructions and by failing to give one requested instruction, the trial court erred in failing to inform the jury that "quantum meruit recovery under theories of radical deviation and seriously burdensome conditions [must be limited] to a case where the parties abandoned the contract."[1] Donohue alleged in its complaint that

---

[1] The instructions complained of are:

"The fact that a contract may contemplate that changes may be made, that contemplation does not justify radical changes in the quantity of work or the character, nature and cost of the work originally contemplated. Therefore, if a subcontractor is required to perform work under conditions which are radically changed in quantity of work or character, nature and cost of the work from that originally contemplated, then the subcontractor would be entitled to treat the subcontract as to that extent canceled and abandoned and recover the reasonable value for the work and labor and materials performed and furnished."

Hoffman breached the contract in a great many particulars, and that the breaches "obstructed, impeded and delayed Donohue's performance of its work, greatly increasing the cost thereof * * *." The complaint also alleges, in a separate paragraph, that Hoffman wrongfully terminated the subcontract. There is no allegation that the subcontract was abandoned.

■ The law in Oregon on quantum meruit recovery by a party whose performance has been made substantially more onerous by the breaches of the other party is stated in *McDonald v. Supple,* 96 Or 486, 190 P 315 (1920); in *Hayden v. Astoria,* 74 Or 525, 145 P 1072 (1915), and its successor, *Hayden v. City of Astoria,* 84 Or 205, 164 P 729 (1917). Except for dictum in *McGrath v. Electrical Const. Co.,* 230 Or 295, 364 P2d 604 (1961), which was specifically withdrawn by the later opinion in that case denying rehearing, 230 Or 309, 370 P2d 231 (1962), there appear to be no recent cases on the point.

The facts of the *Hayden* cases were that plaintiffs had been hired by the City of Astoria to build a storage reservoir dam and clear a reservoir site. The contract stated the amount of materials anticipated to be required in the construction, and also stated a date for completion. However, the defendant city changed the plans and delayed the work, causing plaintiffs extra

"The prime contractor cannot require a subcontractor to perform the subcontractor's work under serious burdensome conditions which are not within the contemplation of the parties without becoming obligated to pay the subcontractor the reasonable value of services and costs in performing the work which resulted from those unforeseen and seriously burdensome conditions, if any."

Hoffman's requested instruction which was not given was:

"In considering whether Hoffman's alleged acts constituted a radical deviation amounting to an abandonment of the contract, you are to consider the evidence regarding the actions of both parties. If you find from the evidence that both parties, by their actions, continued to operate under the contract, considering it still in force, then Donohue cannot recover quantum meruit costs from Hoffman."

expense in rendering their performance. We held, in the first *Hayden* case, that plaintiffs could recover those extra expenses in quantum meruit under two rules. The first, discussed in 74 Or at 530-31, was that the contract "was deviated from in material particulars." We said that under the circumstances the contract could be treated as abandoned, at least to some extent, and a new contract for the reasonable value of the services implied.

The other rule of recovery in *Hayden* was that where an owner is obligated by the contract to render a performance, he must render it "in such a way as not to retard the contractor; and, if through the act or omission of the owner under such circumstances the work is delayed in such a way as to make performance impossible, the contractor can recover upon the *quantum meruit* * * *." 74 Or at 533. This statement of the rule is not quite correct under the facts of *Hayden,* because plaintiff's performance had not been made impossible, merely more difficult. Under the facts and result of the case, *Hayden* must be taken as allowing quantum meruit recovery where the conduct of the defendant makes plaintiff's performance substantially more onerous. This interpretation was adopted by the court in the second *Hayden* case, 84 Or at 211-12.

Under the second *Hayden* rule, plaintiff need not prove that the parties intended to abandon the contract; rather, he need only show that the defendant imposed substantially burdensome conditions of performance not contemplated by the parties when they entered into the contract.[2]

The above interpretation of *Hayden* was followed in *McDonald v. Supple,* 96 Or 486, 190 P 315 (1920). In

[2] Indeed, *Hayden* does not even seem to require that the defendant's conduct be a breach of the contract; but in fact it was, and the court may not have thought it necessary to mention the point.

The present case was submitted to the jury on the theory that if Hoffman failed to perform its contractual obligations in the particulars alleged, that failure constituted a breach. Except as we discuss in this opinion, the propriety of that theory was not challenged.

that case, defendant hired plaintiff to build two dredge-hulls. Defendant was to supply materials and equipment at specific times but failed to do so, causing plaintiff's cost of performance to be several times greater than that contemplated by the contract. Plaintiff recovered at trial on a quantum meruit theory, and we affirmed, stating:

> "The testimony on behalf of plaintiff tended to establish such changes in the work caused by the failure of the defendant to perform his part of the contract, which made the labor more burdensome and extended the same to two or three times the amount it would ordinarily have been, if the material had been delivered at the time and in the condition agreed upon. Therefore the plaintiff could properly recover upon a *quantum meruit* * * *." 96 Or at 496-97 (*citing, inter alia,* the *Hayden* cases).

*McDonald* does not require the plaintiff to prove that the parties intended to abandon the contract. The effect of the *McDonald* rule is, of course, to supersede the contract with respect to price; but the parties need not intend that result. *Wakefield v. Supple,* 82 Or 595, 160 P 376 (1917), predecessor to *McDonald,* makes this clear. *Wakefield* was based upon the same facts as *McDonald,* but plaintiff's theory was oral modification of the contract. We affirmed the trial court's order in that case setting aside a verdict for plaintiff and granting a new trial on the basis that the evidence did not support a finding that the parties actually agreed to modify. *McDonald,* on the other hand, is clearly based upon quantum meruit, and not, as Hoffman contends, upon express oral modification.

Cases cited by Hoffman are not in point on this question. *Wuchter v. Fitzgerald,* 83 Or 672, 163 P 819 (1917), and *Dickson v. Emmerson,* 154 Or 558, 61 P2d 439 (1936), were based on wrongful termination alone. No question of the defendant's responsibility for a substantial increase in the cost of performance was involved. The plaintiff in *Sweeney v. Jackson County,* 93 Or 96, 178 P 365, 182 P 380 (1919), sought recovery

on the contract. There was no issue as to whether quantum meruit would have been available as an alternative basis of recovery.

■■ In summary, our cases recognize that quantum meruit recovery is available to a contractor whose performance has been made substantially more difficult and costly by the other party's actions, and that a finding that an abandonment of the contract can be inferred from the parties' actions is not required. Donohue did not frame its complaint on the theory of abandonment, and therefore did not assume the burden of proving that an abandonment occurred. The trial court did not err in refusing to instruct the jury that an implied abandonment of the contract was a prerequisite to quantum meruit recovery if they found that Hoffman had made Donohue's performance substantially more burdensome than it would have been under the conditions of performance originally contemplated.

■ Hoffman also contends that an improper basis for quantum meruit recovery was submitted to the jury by the following instruction:

"Where the increased costs arising from damages to a subcontractor from unreasonable difficulties imposed on the subcontractor by the prime contractor where these damages or costs cannot be measured by attempting to aportion [*sic*] the cost to detail parts or performance of the work and the conditions for the performance of the work have been substantially changed, then the subcontractor is entitled to recover the reasonable value of its work, labor and materials performed."

However, the only alleged error pointed out in Hoffman's exception to this instruction had to do not with the grounds for quantum meruit recovery but with the determination of the amount to be recovered. We discuss that aspect of the case later in this opinion. The other alleged errors in the instruction are not

[798]

properly before us because they were not pointed out to the trial judge. ORS 17.510.[3]

■ The second group of alleged errors which we consider involve contentions that the instructions on the parties' respective duties were inconsistent with the terms of the subcontract. The jury was instructed:

> "There is an implied covenant or an implied agreement in every construction contract of this sort between a contractor and subcontractor which requires the contractor to furnish and maintain the site in a reasonable condition to permit the work to be done, and failure to do so is a breach of the contract by the prime contractor."[4]

Hoffman argues that this instruction was error because the subcontract contains express provisions to the contrary. The agreement does impose some duties on Donohue to maintain its work sites. It does not, however, place the whole duty on Donohue. The jury had the subcontract before it and was also instructed:

> "The legal relationship between [the parties] is set out in the subcontract * * *.
>
> "* * * * *.
>
> "If you find from the evidence that Donohue and Fleskes failed to perform its obligations under the subcontract, then Hoffman Construction was justified in taking over and completing Donohue and Fleskes' work."

Taking the instructions as a whole, as we do, *Hansen v. Bussman,* 274 Or 757, 781, 549 P2d 1265 (1976), we conclude that the jury was not likely to be misled by the instruction into believing that Donohue had *no* obligation to maintain the site. Rather, it would have believed that Donohue was obliged by the subcontract

---

[3] That statute provides, in part:

"No * * * instruction given to a jury in the circuit court shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception was made in the circuit court."

[4] This rule was stated in *Northeast Clackamas C.E. Co-op v. Continental Cas. Co.,* 221 F2d 329, 334 (9th Cir 1955).

to maintain the site to the extent specified by its terms and that Hoffman was obliged to do the other, unspecified, maintenance.[5] This instruction did not constitute reversible error.

■ The trial court also told the jury that:

> "When a subcontract provides that the subcontractor is to perform and furnish work within a fixed *period, the prime contractor* has a duty to afford the subcontractor a fair and reasonable opportunity to begin and complete the work within the time originally specified and to furnish the required materials, secure the rights-of-way, prepare the site and conditions as may be required by the subcontract so that the subcontractor in the exercise of reasonable diligence may begin and finish the work within the prescribed period without being subjected to unreasonable costs or expenses on account of any default, delays or interference by the prime contractor."

Hoffman argues that this instruction was "squarely contrary to the express terms of the contract," which contained provisions dealing with the effect of various kinds of delays on the parties' contract obligations.

We have some doubt whether Hoffman's exception to this instruction was adequate to raise the argument it now makes.[6] We do not pass on that question, however, because, in any event, Hoffman's argument is not well taken. The jury was also instructed that the legal relationship between Hoffman and Donohue was set out in the subcontract, which was an exhibit available for their reference. The challenged instruction was to the effect that the prime contractor's duties

---

[5] Hoffman does not argue that it had no duties at all in maintaining the site, and the record would not support such a conclusion.

[6] The arguably applicable portion of that exception was:

"The contract again speaks for itself. This is in our opinion an unreasonable comment on the evidence; telling the jury something that is beyond what is in the contract itself."

with respect to the matters enumerated in the instruction are such as "may be required by the subcontract." The instruction was not in conflict with the subcontract.

■ Next we consider Hoffman's assignments of error that challenge the trial court's instructions on the proper measure of recovery. A number of separate instructions are involved, and we will not set them out in full. Hoffman's main argument is that the jury was erroneously told that if Donohue prevailed it was entitled to recover the reasonable value of the materials and labor it furnished.

Our cases have not clearly stated how quantum meruit recovery is to be calculated. A number of formulas appear in the cases, but there are no explanations of how those formulas are derived.[7] Hoffman contends that the true measure of recovery is the value of the benefit conferred upon it—that is, the amount by which it has been enriched. Donohue contends that the true measure is the reasonable value of the work itself, a market value measure.

In light of the bases for the recovery in this case, Donohue's measure of damages is the correct one. As discussed above, Donohue was entitled to a quantum meruit recovery in some amount if, as it contended and the jury was entitled to find, Hoffman's conduct made Donohue's performance substantially more difficult and costly. To limit recovery to the measure for which Hoffman contends would effectively nullify Donohue's right of recovery, which is premised on Hoffman's conduct. Therefore, if Donohue can prove its case on this theory, it is entitled to recover the reasonable

---

[7] *See*, for example, *Hall v. Banta,* 283 Or 387, 390, 583 P2d 1139 (1978) ("the reasonable value of plaintiff's labor and materials furnished"); *Dickson v. Emmerson,* 154 Or 558, 562, 61 P2d 439 (1936) ("the reasonable value of the work done which inured to the benefit of defendants, within the limits of the price of the total contract"); *Hayden v. Astoria,* 74 Or 525, 531, 533, 145 P 1072 (1915)("the reasonable value of the work performed").

value of the performance, not just the increase in Hoffman's wealth.[8]

■■ The case was also submitted to the jury under instructions that if Hoffman wrongfully terminated the contract, Donohue was entitled to recovery in quantum meruit. This is a well-recognized basis for quantum meruit recovery. *See e.g., Paul & Backer Co. v. Newman,* 252 Or 66, 68, 448 P2d 511 (1968); *Mohr v. Lear,* 239 Or 41, 48, 395 P2d 117 (1964). We do not understand Hoffman to challenge this theory of quantum meruit as a basis for recovery. We agree with the following authorities that the proper measure of recovery in quantum meruit for wrongful termination is the reasonable value of the contractor's performance rather than the value of the benefit conferred: 5 Corbin on Contracts §§ 1094, 1112 (1964); D. Dobbs, Remedies at 915, § 12.24 (1973); Restatement, Contracts § 347 (1933).[9]

■■ Under circumstances where the proper measure of restitution is the reasonable value of the performance rendered by the plaintiff (as opposed to the value of the benefit received by the defendant), the reasonable

---

[8] *See* Restatement, Contracts 592, § 348 comment a; Acme Process Equipment Co. v. United States, 347 F2d 509, 530, 171 Ct Cl 324 (1965), *rev'd on other grounds United States v. Acme Process Co.,* 385 US 138 (1966).

The *Hayden* cases support this result by specifically allowing the plaintiff to recover the contract price plus the reasonable value of the extra costs of performance occasioned by defendant's conduct. Hoffman has not contended that the *Hayden* rule is exclusive, and this case was tried on the theory that it was not possible to apportion the specific extra costs to specific difficulties caused by Hoffman's conduct. *McDonald v. Supple,* 96 Or 486, 190 P 315 (1920), allowed recovery for the reasonable value of the total performance under circumstances causing a similar difficulty of apportionment.

[9] *Dickson v. Emmerson,* 154 Or 558, 61 P2d 439 (1936), and *Wuchter v. Fitzgerald,* 83 Or 672, 163 P 819 (1917), cited by Hoffman on another issue, are wrongful termination cases. Both hold that plaintiff's recovery is measured by the reasonable value of the performance rendered, but is limited by the contract price. Neither case, as we pointed out above, involved any issue of additional costs of performance caused by the defendant. Hoffman has not contended in this case, in which such extra costs are the central issue, that if Donohue is properly entitled to quantum meruit recovery, the amount must be limited by the contract price.

[802]

value means the amount for which the services and materials furnished by plaintiff "could have been purchased from one in plaintiff's position at the time they were rendered." Restatement, Contracts, *supra* at 587, comment *c*; 5 Corbin, *supra* at 574-75, § 1107. This is a market value measure rather than a measure directed at reimbursement for actual costs. A measure of recovery based on market value contemplates, we believe, a price that would enable the average subcontractor in plaintiff's position at the time the services and materials were furnished to make a reasonable profit. Profitability to the average seller is inherent in the concept of market value. So is an allowance for overhead.

■ Evidence of the plaintiff's actual costs and the ordinary industry allowance for overhead and profit is relevant to the jury's determination of the reasonable value of the services and materials which were furnished. The following cases recognize that an allowance for profit may be included in a restitutionary award under a measure of recovery similar to that approved here: *Johnson County Sav. Bank v. City of Creston,* 212 Iowa 929, 231 NW 705, 708 (1930); *Brummett v. Hamel's Dairy, Inc.,* 324 So2d 502, 505 (La App 1975); *Shaddock v. Schwartz,* 246 NY 288, 158 NE 872, 873 (1927); *V. C. Edwards Contracting Co., Inc. v. Port of Tacoma,* 7 Wash App 883, 503 P2d 1133, 1138 (1972), *aff'd* 83 Wash 2d 7, 514 P2d 1381, 1386 (1973). *Contra, Isaac v. Koenig,* 447 SW2d 818, 820 (Mo App 1969).[10]

---

[10] It should be noted that the measure of recovery appropriate to this case will not necessarily apply to other quantum meruit cases. For example, where the plaintiff has breached the contract, we have held that plaintiff can recover in quantum meruit only if the performance was of value to the defendant. *Trachsel v. Barney,* 264 Or 29, 34, 503 P2d 696 (1972).

It is unclear whether *Trachsel* also limits plaintiff's recovery to the amount by which defendant's wealth has been increased. The case simply states that plaintiff may recover "the reasonable value of material furnished and work performed" provided that the work performed "be 'of value' * * * or that it be 'substantially beneficial'" to the defendant. 264 Or at 34.

Hoffman also argues that the trial court's instructions on measure of recovery were repeated so many times that Hoffman was prejudiced. This was a complex case as to both the facts and the issues submitted to the jury. The trial court might well have concluded in its sound discretion that some repetition in the instructions was necessary to assist the jury. A trial court should strive not to unduly emphasize a portion of either party's requested instructions but emphasis by repetition does not constitute reversible error. *Harkins v. Doyle,* 271 Or 664, 669, 533 P2d 785 (1975).

Finally, Hoffman complains about the following instruction:

"Now, as I explained to you at the outset of the trial, Seaboard Surety Company's interest and Hoffman Construction Company's interest is exactly the same. Under the terms of the bond, Seaboard Surety Company will be obligated to pay anything that you find Hoffman Construction Company is obligated to pay, and that's why they take no part in the trial."

Hoffman excepted to this instruction on the ground that it failed to inform the jury that Hoffman, not Seaboard, would be ultimately responsible for paying the judgment.

We agree that the quoted instruction is misleading and could, if it stood alone, be prejudicial. That is not the case here, however. By instruction and by the verdict form, the jury was required, if it found in favor of Donohue, to render a verdict against both Hoffman and Seaboard. It was also instructed that

"* * * the surety is a specific type of relationship in which the principal must primarily be liable before the surety can be found liable.

"And under our law if both the principal and surety are found responsible for a loss, then the surety is entitled to indemnification and to recover that loss over against the principal."

That instruction was given following an explanation that if Hoffman prevailed, the jury must return a verdict against both Donohue and its surety. However,

[804]

the language is general and unequivocally informed the jury that the principal, not the surety, would be ultimately liable. This is exactly the explanation which Hoffman contended should be given. We find no prejudice resulting from the court's failure to include the same statement in another instruction.

There are additional arguments and assignments of error directed at the instructions which we do not discuss because the errors now claimed were not called to the trial court's attention. ORS 17.510, quoted at note 3, *supra.*Hoffman contends that we may consider such errors in the absence of a proper exception, *citing Rogers v. Hill,* 281 Or 491, 497 at note 4a, 576 P2d 328 (1978). *Rogers* stands for the proposition that a formal exception, so denominated, may not be necessary to preserve a question for review where the record of the proceedings makes it "plain that the trial court was fully apprised of defendant's point and had made up his mind on the issue." It does not hold that alleged errors in the instructions which were never argued to the trial court may be raised for the first time on appeal. The statute makes it clear that they may not.

■ On cross appeal, Donohue contends that it is entitled to interest on the amounts due in quantum meruit from the date the subcontract was wrongfully terminated. This contention is correct. In *Hill v. Wilson,* 123 Or 193, 199, 261 P 422 (1927), an action seeking quantum meruit recovery for services rendered, we held that the pay for the services was due when the services were rendered, and relied on the predecessor of ORS 82.010[11] to allow interest on the sum due from the due date. This result is consistent with the common law rule as stated in Restatement,

---

[11] ORS 82.010 provides in part:

"(1) The legal rate of interest is six percent per annum and is payable on:

"(a) All moneys after they become due * * *.

"* * * * *."

Contracts § 347(2) (1932).[12] Prejudgment interest should have been awarded from March 5, 1974.

The judgment is affirmed in all respects except for the failure to include prejudgment interest. The judgment is affirmed as modified and the case is remanded for entry of judgment accordingly.

---

[12] *Hayden v. City of Astoria*, 84 Or 205, 223, 164 P 729 (1917), states a contrary result. However, one of the cases *Hayden* relies on, *Sargent v. American Bank and Trust Co.*, 80 Or 16, 39, 154 P 759, 156 P 431 (1916), denies prejudgment interest based on an interpretation of the predecessor of ORS 82.010 that was specifically changed by the legislature in 1917. Or Laws 1917, ch 358, § 1. The *Sargent* case held that the "moneys due" provision of the statute only applied to moneys due on judgments and decrees. The 1917 legislation changes the relevant portion of the statute to its present form, making clear that interest is payable on all moneys after they become due, not just those payable on judgments.

The other case *Hayden* relies on, *Baker County v. Huntington*, 48 Or 593, 603, 87 P 1036, 89 P 144 (1906), was not a quantum meruit case. In quantum meruit cases, *Hill v. Wilson*, 123 Or 193, 261 P 422 (1927), and the *Restatement* set out the proper rule.