Argued and submitted March 24, affirmed in part; reversed in part June 30, reconsiderration denied October 7, petition for review denied November 10, 1980 (290 Or 149)

# ARDEN-MAYFAIR, INC.,
*Appellant - Cross-Respondent,*

*v.*

# PATTERSON, et al,
*Respondents - Cross-Appellants.*

## (No. CC 77-553, CA 13953)

613 P2d 1062

S. Ward Greene, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Otting & Enz, P.C., Portland.

D. Richard Fischer, Astoria, argued the cause for respondents - cross-appellants. With him on the brief was Larson & Fischer, Astoria.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

JOSEPH, P.J., dissenting opinion.

## WARDEN, J.

The defendants will be designated singularly in this opinion, referring to Arlene J. Patterson only. She was awarded the interest of defendant Randall O. Patterson in the business, Astoria Frozen Foods, in a marriage dissolution proceeding prior to trial of this case.

This appeal arises out of plaintiff's action on a promissory note and defendant's counterclaim for overpayment of the note. The jury found for defendant on her counterclaim in the sum of $10,500. The trial court ordered judgment in that sum with interest at the rate of 6% per annum from the first day of August, 1976, and awarded defendant $6087.50 accounting fees as a part of defendant's costs and disbursements. Both parties appeal. We affirm the judgment for defendant in the sum found by the jury and the trial court's award of accounting fees, but we reverse the allowance of prejudgment interest.

Plaintiff and defendant began doing business in 1965. Plaintiff supplied ice cream and other dairy products to defendant, who was both a jobber for plaintiff, delivering products to direct customers of plaintiff, and also a purchaser, reselling products for defendant's own profit. Defendant was billed for every item she picked up from plaintiff's warehouse in Portland, including a charge for milk containers, regardless of whether she was purchasing products for resale or for delivery to plaintiff's direct customers. Plaintiff later issued credits to defendant for transactions she handled merely as jobber. The credit equaled the purchase price of the products plus a profit to defendant for servicing the account. Plaintiff also issued credits for damaged products, billing errors and returned milk containers.

Prior to 1973, defendant's account balance was never greater than a few thousand dollars. Difficulties arose in 1973, when plaintiff's billings to defendant

began to show that defendant owed between $10,000 and $13,000, though there was little change in defendant's purchases or her deliveries to plaintiff's customers.

In March, 1973, defendant met with plaintiff's accounts receivable manager and one of its bookkeepers in Portland to try to reconcile the account. At that time, defendant's statement showed a balance of $13,000. The parties determined that the defendant actually owed plaintiff approximately $3500. Defendant wrote plaintiff a draft for $3500. Plaintiff was to correct errors on future statements.

Despite the apparent resolution of the matter, defendant's statements continued to show large balances due. Plaintiff continued to demand payments of these amounts. Defendant refused to pay. In June, 1973, defendant was put on a cash basis. Thereafter, defendant paid for each item as it was picked up from plaintiff's warehouse.

Disagreement as to the amount owed continued until August, 1973, when defendant executed a promissory note for $16,585.23. In exchange for the note, plaintiff agreed to issue to defendant all credits due her. Defendant paid on the note until September, 1976. At that time, she stopped doing business with plaintiff.

Plaintiff commenced this action in September, 1977, for the balance claimed due on the note. Defendant counterclaimed in August, 1978, for $10,500.51, alleging that she had overpaid plaintiff by this amount because credits due her had not been applied against the note.

In late November, 1978, the parties signed a stipulation wherein they agreed to retain the accounting firm of Yergen and Meyer to attempt to arrive at a balance of the parties' account. The parties further agreed that the losing party in this litigation would pay the accounting fees.

The Yergen and Meyer accountant worked from a balance of $3577.71, the sum agreed by the parties to be the true balance as of November 4, 1972. From that time forward the accountant had to reconstruct the account from the records of the parties. The accountant reviewed the charges and credits from November, 1972, until June, 1973, when defendant was placed on a cash basis. After June, 1973, the accountant had to look for credits due defendant, and to determine whether defendant actually received them. The accountant did not examine the parties' records of their dealings past September, 1973, when defendant signed the promissory note.

The accountant admitted in her testimony that she could not determine exactly the state of the account between the parties, but she explained what she did find. She relied primarily on plaintiff's accounts receivable records. Using only the figures from those records which she could verify from actual invoices, the accountant found $8708.82 due defendant from plaintiff. Defendant's testimony allowed an inference of overpayment of nearly $11,000. The jury found for defendant in the sum of $10,500. The trial judge ruled that defendant was entitled to prejudgment interest on that sum from August 1, 1976. Finally, the judge assessed accounting fees of $6087.50 against plaintiff as a part of defendant's costs and disbursements.

The accounting firm had actually submitted a bill for $7750. The trial court subtracted from that sum $162.50, the accounting firm's billing for appearances in court, and $1500 of the bill for work done in November, 1978.

Plaintiff first contends that the trial court erred in failing to instruct the jury that if it found for defendant, the upper limit of the award must be the amount arrived at by the accountant. No exception was made to the instructions, however, and therefore, we will not consider them on appeal. *City of Portland v. Hoffman*

*Construction Co.,* 286 Or 789, 805, 596 P2d 1305 (1979), former ORS 17.510.[1]

Plaintiff also assigned as error the trial court's denial of plaintiff's motion for a new trial. Plaintiff based its motion for a new trial on "surprise," ORS 17.610(3), because the report of the accounting firm was not presented to plaintiff's counsel until the second day of trial. The accountant had just completed the report. Defendant's attorney also received the report at that time. Counsel made no motion for continuance, nor any other effort to mitigate surprise upon receipt of the report. "[A]n order denying a motion for a new trial is not appealable where the grounds of the motion could have been, but were not, urged prior to judgment." *Schafer v. Fraser,* 206 Or 446, 290 P2d 190 (1956). Therefore, we decline to review the denial of a new trial on the basis of surprise.

The second ground upon which plaintiff bases its motion for a new trial is that the verdict for defendant, in the amount prayed for by that party, reflected a jury acting under the influence of passion or prejudice. Plaintiff contends that the fact that some of the jurors knew defendant and the accountants who testified for defendant supports the conclusion that the verdict was the result of passion or prejudice. Acquaintance of a juror with a party is more a matter for challenge at voir dire than for motion after trial. Moreover, plaintiff has offered no evidence that such facts prejudiced the jurors favorably toward defendant. See *Huston v.*

---

[1] Former 17.510 provided that:

"No statement of issues submitted to the jury pursuant to ORS 17.320 and no instruction given to a jury in the circuit court shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception was made in the circuit court."

This requirement is now found in ORCP 59(H).

*Trans-Mark Services,* 45 Or App 801, 609 P2d 848 (1980). After careful examination of the record, we cannot "affirmatively say there is no evidence in the record to support the verdict." Or. Const., amended art. VII § 3. The accountant was unwilling to conclude that any amount was due defendant in excess of what she could verify by cross-checking the accounts receivable against the invoices. She testified that in June, 1973, plaintiff was claiming that defendant owed $10,734.56 more than the sum she found to be due at that time and that "* * * there was $30,000 of credits that I could not identify." This evidence, together with defendant's testimony, is sufficient to support the jury verdict.

We find no merit in plaintiff's additional argument that under ORS 18.160[2] it should have been given relief from the judgment. The aim of this statute is that "the rights of the litigants shall be determined on the merits of the controversy," *Morrell v. Lane County,* 35 Or App 793, 582 P2d 847 (1978). It applies to judgments and decrees taken by default. It has no application to a case where the parties had the benefit of a three-day jury trial.

Plaintiff's third assignment of error on appeal and defendant's first assignment of error on her cross-appeal both address the sum of accountant's fees the trial court ordered plaintiff to pay. The assessment of the fees allowed the accounting firm's charges for work done from November 29, 1978, the date of the stipulation, through the time of trial. Plaintiff argues that the attorneys for the parties withdrew the accounting firm's authorization to continue work when they ordered the accountant to stop in December, 1978.

---

[2] ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.

[855]

Plaintiff's attorney had learned in December, 1978, that the accountant's bill was approaching $2500. Surprised at the magnitude of the accountant's task, the attorneys for the parties requested the accountant to stop work, which she did for a time. After receiving some assistance from a representative of plaintiff's accounts receivable department to help clear up some of the confusion in the account, the accountant resumed her work. By their stipulation the parties agreed that the accounting firm would compare the records of the parties to determine the balance of the account, if possible. The accountant's first task was a virtual reconstruction of the books. Apparently, it was the time devoted to this task that prompted the attorneys' order to stop. Plaintiff's subsequent action in sending an employee of plaintiff to help the accountant does not support plaintiff's argument that the stop order amounted to a rescission of the parties' earlier agreement. Sending the accountant help is inconsistent with the claim that plaintiff intended the accountant to cease work altogether. The parties did not rescind their agreement to retain the accounting firm and, therefore, plaintiff as the losing party was properly ordered to pay the accountant's fees pursuant to that agreement.

Defendant argues that the trial court erred in disallowing $1500 of the accountant's bill attributed to work done prior to the stipulation. The trial court had reasoned that as the stipulation was signed on November 29, 1978, $1524.70 was an unreasonably large sum to charge for November and, therefore, the trial court reduced the amount by $1500. Defendant argues that, contrary to the trial court's understanding of the matter, the parties retained the accounting firm prior to the date of the stipulation and that the charge for November reflects work done for the parties before and after November 29. Defendant offers, for the first time on appeal, copies of correspondence between the parties' attorneys regarding retention of an account-

ant in support of her contention. Appellate courts, however, may not consider material not contained in the record below. *McFarland v. Oregon Electric Railway Co.,* 70 Or 27, 31, 138 P 458 (1914). We find no evidence in the record that the accounting firm commenced work before the date of the stipulation. Therefore, we will not disturb the trial court's ruling that plaintiff was not responsible for $1500 of the amount attributed by the accounting firm to work in November.

Plaintiff's last assignment of error and defendant's second assignment of error involve the award of prejudgment interest. Plaintiff argues that no prejudgment interest should have been awarded, while defendant contends that the date from which the interest was computed was incorrect. Defendant argues that the interest should run from August, 1974, the date alleged in the prayer of her counterclaim[3] and not August, 1976, as the trial court ordered.

The controlling rule for the allowance of prejudgment interest is found in *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943), which held it can be allowed only

"* * *[w]here 'the demand is of such a nature that its exact pecuniary amount was either *ascertained, or ascertainable* by simple computation, or by reference to generally recognized standards such as market price,' and where 'the time for which interest, if allowed, must run,—that is, a time of definite default or tort-feasance,—can be ascertained.' " (Quoting 1 Sedg. on Damages (9th Ed), 571, § 300; emphasis in original).

Given the conflicting claims of the parties, it can hardly be said that the exact pecuniary amount owed by plaintiff was easily ascertained, or ascertainable,

---

[3] Defendant contends that the schedule of payments shows that defendant paid all her debts to plaintiff with her January, 1974, payment on the note. Her counterclaim, however, only prayed for interest from August, 1974, and she is limited to that amount on appeal.

by simple computation. A review of the evidence clearly shows that the parties did not agree upon the amount in dispute. In *Catlin v. Knott,* 2 Or 321 (1868), the Supreme Court addressed the same issue. In that case, the plaintiff claimed defendant owed him money; defendant denied that, claimed he had paid plaintiff money and "seemed to think he ought to recover [the amount he had paid] back." The court denied the prevailing party prejudgment interest in *Catlin,* noting that "[I]t does not appear from the record * * * that the parties ever had any distinct understanding or agreement as to the amount of indebtedness on the one side, or of claim on the other * * * * It is very evident there was no mutual understanding as to any certain amount of difference between them.' "

We reverse that part of the amended judgment order which awarded prejudgment interest to the defendant. The judgment is otherwise affirmed.

Affirmed in part; reversed in part.

**JOSEPH, P.J.,** dissenting in part

I would affirm the judgment. Defendant alleged and proved that plaintiff had had $10,500 of her money since August, 1976. Therefore, she ought to have interest on that calculated amount.