Argued and submitted October 25, 1982, reversed and remanded February 16, reconsideration denied April 1, petition for review denied May 3, 1983 (294 Or 792)

# B & D INVESTMENT CORPORATION,
*Respondent - Cross-Appellant,*

*v.*

## PETTICORD et ux,
*Appellants - Cross-Respondents,*
*and*

## PIONEER NATIONAL TITLE INSURANCE COMPANY et al,
*Appellants.*

(77-6-414; CA A22762)

659 P2d 400

John M. Berman, Portland, argued the cause for appellants - cross-respondents James E. Petticord and Doris J. Petticord and appellants Pioneer National Title Insurance Company and First National Bank of Oregon. With him on the briefs was Spears, Lubersky, Campbell & Bledsoe, Portland.

Elizabeth Yeats, Portland, argued the cause for respondent - cross-appellant. With her on the briefs were Paul R. Meyer, and Kobin & Meyer, P.C., Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This case is now before us on the parties' appeals from the judgment entered after our remand in *B & D Investment v. Petticord,* 48 Or App 345, 617 P2d 276, *rev den* 290 Or 302 (1980).

Plaintiff B & D Investment Corporation initially brought the action to foreclose a construction lien and to recover damages in connection with plaintiff's efforts to construct a residence for defendants James and Doris Petticord. Defendants Pioneer National Title Insurance Company (Pioneer) and First National Bank of Oregon (bank) are, respectively, the trustee and beneficiary of a trust deed that plaintiff claimed was subordinate to the lien. At the first trial, the trial court decreed foreclosure of the lien and awarded plaintiff damages against the Petticords. We reversed the foreclosure and remanded the case to the trial court to award appropriate *quantum meruit* damages.

On remand, the trial court, *inter alia,* awarded plaintiff damages of $20,436.26 against the Petticords, dismissed the complaint as to Pioneer and the bank and awarded Pioneer, the bank and plaintiff costs and disbursements but not attorney fees. The Petticords appeal from the damage award. Pioneer and the bank appeal from the denial of attorney fees. Plaintiff cross-appeals from the denial of the attorney fees it sought. We again reverse and remand.

In our earlier decision, we found generally that plaintiff's attempt to construct the residence was seriously impeded by defects in the plans prepared by the Petticords' architect. Plaintiff deviated from the plans, apparently with the architect's authorization. However, the contract required plaintiff to obtain the Petticords' approval before departing from the plans, but plaintiff did not do so. We therefore concluded:

> "When a contractor makes intentional and substantial deviations from the contract plans and specifications without the owner's consent, he is not entitled to foreclose a construction lien. * * *
>
> "* * * * *
>
> "* * * B & D bypassed the written change order procedure provided for in the contract, and intentionally built

the house in a manner materially different from that set out in the plans. * * *" 48 Or App at 348, 354.

We instructed the trial court on remand to

"* * * determine the reasonable value, if any, of the materials furnished and services rendered by the plaintiff to the defendants Petticord. *Welch v. Webb,* 47 Or App 771, 615 P2d 391 (1980); *Betz [Construction] v. Peterson,* 47 Or App 333, 614 P2d 1184 [*rev* 289 Or 677] (1980)." 48 Or App at 355. (Footnote omitted.)

Against that background, we turn to the present appeals.

Plaintiff and the Petticords devote large parts of their briefs to conflicting recitations of the facts. In our view, those factual disagreements are of limited relevance to our disposition and will be discussed only as they bear on the legal issues we consider.

Plaintiff and the Petticords disagree about what test the trial court should have applied in determining plaintiff's *quantum meruit* damages. It can be ascertained from the court's written findings that the method used was to determine the "reasonable value of the total work and materials" and to subtract from that amount, first, the value of services and materials "in excess of [those] authorized by the contract" and, second, the amounts previously paid plaintiff.

Each party contends, essentially, that the other breached the contract and that it did not. Given its view of the facts, plaintiff argues that the trial court applied the correct standard in measuring damages and that there was substantial evidence to support the award. *See City of Portland v. Hoffman Const. Co.,* 286 Or 789, 596 P2d 1305 (1979). Given their factual premises, the Petticords argue that the trial court should have measured damages in accordance with Restatement of Contracts, § 357 (1932). The Petticords rely on *Welch v. Webb,* 47 Or App 771, 615 P2d 391 (1980), where we said:

"* * * The rule is stated in Restatement of Contracts, § 357 (1) (1932):

" '(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the

contract that is a net benefit to the defendant, the plaintiff can get judgment, * * * for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

" '(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

" '(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred * * * accepts the benefit of [the part performance] * * *.'"

"See Trachsel v. Barney, 264 Or 29, 34, 503 P2d 696 (1972).

"The trial court has already made findings as to the reasonable value of the work done by plaintiffs. Defendant counterclaimed for the costs incurred in completing the work plaintiffs had started. Defendant had presented evidence of those costs. We therefore remand the matter to the trial court to make findings regarding the extent to which plaintiffs' work benefited defendant and the amount, if any, of defendant's offsetting damages. * * *" 47 Or App at 775-76. (Footnote omitted.)

See also City of Portland v. Hoffman Const. Co., supra, 286 Or at 803, n 10.

If the Petticords' view of the facts is correct, damages should have been determined in accordance with Welch v. Webb, supra, rather than in accordance with the formula the trial court used. However, the court did not make the findings necessary to enable us to know whether Welch should have been applied.

The court's only finding bearing on breach or nonperformance by either party was that "defendant[s] Petticord [have] failed to prove that a breach of contract by plaintiff caused damage which would constitute a basis for recoupment by [the Petticords]." We found in the first appeal that plaintiff had intentionally breached the contract by not complying with the provision governing approval of change orders; our de novo finding was binding on the trial court on remand.[1] It is not clear whether the

---

[1] Our review of the first appeal, involving foreclosure of the lien, was de novo. However, we review the trial court's findings in the quantum meruit proceeding on remand as in an action at law. See Welch v. Webb, supra, 47 Or App at 776, n 3.

trial court's finding is consistent with ours. If the former is read to mean only that no damages that the Petticords could recover by counterclaim resulted from plaintiff's breach, our finding and that of the trial judge are not necessarily inconsistent. Our opinion did not address a number of contentions by the Petticords regarding acts or omissions by plaintiff that allegedly caused damage. Most significantly, the Petticords argue that inferior workmanship by plaintiff was the source of much of the damage they sustained. On remand, the trial court found that the Petticords had not proved that plaintiff's work was not performed in a good and workmanlike manner.

■      In any event, there were other factual questions that the trial court had to and did not decide—at least expressly—before it could determine what test to apply in awarding damages. Those questions include some or all of the following: (1) whether plaintiff's part performance resulted in a net benefit to the Petticords; (2) whether the Petticords, with knowledge of plaintiff's breach or nonperformance, accepted the benefit; (3) whether the Petticords failed or refused to perform their contract; and (4) if so, whether their failure or refusal was justified by plaintiff's breach or nonperformance. The trial court's findings on those questions cannot be inferred from the fact that it did not apply the *Welch* standard, because it did make express written findings on other issues. We remand the case for further proceedings on the issue of plaintiff's damages.

■      The Petticords make several other arguments, most of which are implicitly answered or are rendered immaterial to our present disposition by what we have said above. Three of the arguments do require discussion. The Petticords contend, first, that the contract between them and plaintiff contains a retainage provision that precludes any *quantum meruit* recovery at this time. The Petticords rely on Restatement of Contracts, § 357 *(2), supra,* which provides:

> "The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty."

That subsection of § 357 was not adopted in *Welch*. In any case, plaintiff's entitlement to recover appropriate *quantum meruit* damages was resolved in the first appeal.

■ The Petticords next contend that the trial court erred in denying them leave to amend their "affirmative defense" for "recoupment of * * * costs" to include a counterclaim for the specific amount by which the cost of completion exceeded the contract balance and an amount "for managerial and administrative expenses." According to the Petticords, those amounts became ascertainable between the time they pleaded the defense and the time of the proceedings on remand. However, they do not suggest that evidence of the amounts could not be—or was not—introduced under the unamended pleading, and we conclude that such evidence was within the scope of that pleading.

■ As earlier noted, the trial court found that the Petticords had proved no damages warranting recoupment that resulted from any breach by plaintiff. The Petticords argue that that finding was also error, because there was uncontested evidence that plaintiff's poor workmanship caused the heightened completion costs. We do not agree that the trial court's finding is not supported by the record. It follows that any error or abuse of discretion in the denial of the motion to amend was harmless. We reiterate, however, that plaintiff's breach of the contractual requirement to obtain the Petticords' approval before departing from the plans may be relevant to the issue of plaintiff's damages and that cost of completion evidence may be relevant to the determination of the amount of damages.[2]

Finally, the Petticords contend that the trial court erred in denying their motion to file a supplemental answer, through which they sought to petition

[2] Illustration (3) to Restatement of Contracts, § 357(1), *supra*, states:

"A contracts to erect a building for B, who promises to pay $10,000 on completion. After spending $8000 on the work, A becomes insolvent and cannot complete it. The uncompleted building is worth $7000 as an addition to B's property. It costs B $4000 to complete the building, and he loses $500 in rent because of delay. A can get judgment against B for $5500—this being the value of the part performance less the harm caused by the breach. A's judgment will always be the unpaid contract price less the cost of completion and other additional harm to B, except that it must never exceed the benefit actually received by B."

"* * * the Court to order plaintiff to arbitrate pursuant to Article 8 [of the contract] the sole issue whether the extent to which the expenses of finishing exceeds or does not exceed the unpaid balance of the contract price."[3]

See ORS 33.230.

The Petticords recognize that the first trial and appeal had taken place before they sought to invoke the arbitration provision of the contract. However, they explain:

"* * * [T]he contract between the parties does not provide for arbitration as to all disputes, but only as to certain ones. Article VIII provides for arbitration when the parties cannot agree as to the amount paid by the owner to complete the project. Neither party was asserting affirmative relief based upon Article VIII until defendants Petticord requested permission to File its Supplemental Answer. Thus, that is the first time the issue as to arbitration was raised."

Plaintiff responds:

"At no time prior to trial of this matter did Petticords request arbitration of any of the disputes between the parties, including its alleged claim for reimbursement for costs in excess of the contract price, evidence of which was presented by Petticord at the trial of this matter. Indeed, at trial, Petticords alleged that it cost them approximately $150,000.00 to complete the residence. It appears that the only difference between the completion costs alleged by Petticords in their Second Amended Answer and those which it sought to assert in their Supplemental Answer and their Motion to Amend their Second Amended Answer was an additional $12,000.00 'administrative fee.' In similar circumstances, numerous courts have held that a defendant has waived his right to assert a right to arbitration."

We agree with plaintiff that the answer on which the Petticords proceeded in the first trial contained allegations that were every bit as subject to arbitration under the contract as the matters they claim first became issues on remand. Whether the Petticords are therefore foreclosed from compelling arbitration at this point in the proceedings

---

[3] It does not appear that the Petticords sought to abate the action pending arbitration. ORS 33.240.

is a question that has not been answered by any Oregon appellate decision of which we are aware or that the parties cite.

■■ Plaintiff relies on *Humphries v. Remco, Inc.,* 30 Utah 2d 348, 517 P2d 1309 (1974), where the court stated:

> "* * * The motion to submit the matter to arbitration came after judgment which was too late,—arbitration being designed to prevent litigation,—not to create more controversy in a brand new forum, with a brand new approach, with virtually a brand new trial,—which no doubt are solid reasons that gave rise to the almost universal rule that arbitration is not permissible after judgment." 30 Utah 2d at 350. (Footnote omitted.)

Although the proceedings here have not culminated in a final judgment, the Utah court's statement is germane. When arbitration is a contractual requirement, the parties can waive it. The judicial proceedings in this case, now on appeal for the second time, are so advanced that the Petticords' assertion of a right to "prevent litigation" by invoking the arbitration provision is a transparent and unacceptable exercise in forum shopping.

Pioneer and the bank contend that the trial court erred in sustaining plaintiff's objections to their claim for attorney fees in their cost bill. According to Pioneer and the bank, they are prevailing parties in the lien foreclosure action and are therefore entitled to attorney fees under ORS 87.060(4), which provides in material part:

> "* * * In suits to enforce a lien created by ORS 87.010 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the prevailing party * * *."

Plaintiff makes four basic arguments to support its contention that Pioneer and the bank are not entitled to attorney fees: first, that their rights were finally determined by this court in the first appeal and that they were not parties on remand; second, that they should have and did not move this court for the attorney fees; third, that they are only "nominal parties"; and, fourth, that they were represented by the same attorney as the Petticords, who are not now entitled to attorney fees, and that the attorney's services to Pioneer and the bank were secondary to and embraced within his services to the Petticords. The record

does not indicate which, if any, of those arguments or combination of them was the basis for the trial court's denial of attorney fees.

■ The first three arguments are plainly incorrect. Our decision in the first appeal had the necessary effect of requiring the *trial court* to dismiss the complaint against Pioneer and the bank in the judgment after the proceeding on remand, and the trial court did so. The time and place for Pioneer and the bank to seek attorney fees for the *trial* proceedings were at the remand stage in the trial court. Assuming arguendo that the point is relevant, we also disagree that Pioneer and the bank were nominal parties; the priority of their interests against the claimed lien was at issue.

■ The fourth argument is for the trial court rather than for us to decide. The problem is that the court did not follow the proper procedure in reaching its decision. Proceedings pursuant to ORCP 68C(4)(c) are necessary to resolve the objections to the cost bill. *See Howard-Cooper v. Leray Const., Inc.,* 53 Or App 236, 631 P2d 817, *rev den* 291 Or 771 (1981) (construing the corresponding requirement under former ORS 20.220(1)). We therefore remand for further proceedings on the issue of Pioneer's and the bank's entitlement to attorney fees.

Plaintiff contends in its cross-appeal that it prevailed in the action by virtue of the award of damages and is entitled to attorney fees under the parties' contract. ORS 20.096. Plaintiff accordingly argues that the court erred in not awarding it attorney fees. Because we remand on the damages issue, it remains to be determined whether plaintiff is the prevailing party, and we therefore do not reach plaintiff's contention.

Reversed and remanded for further proceedings not inconsistent with this opinion on the issue of plaintiff's *quantum meruit* damages and on the issue of defendants Pioneer National Title Insurance Company's and First National Bank's entitlement to attorney fees.